SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Sergio Rodriguez v. Raymours Furniture Company, Inc. (A-27-14) (074603)**

**Argued December 1, 2015 -- Decided June 15, 2016**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal, the Court addresses whether the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49, which was established to fulfill a public-interest purpose, can be contravened by private agreement.

In August 2007, plaintiff Sergio Rodriguez, applied for a job with defendant Raymours Furniture Company, Inc., t/a Raymour & Flanigan. The last page of the job application contained a section which applicants were instructed to read carefully before signing. A portion of that section read, in bolded capital letters, "I agree that any claim or lawsuit relating to my service with Raymour & Flanigan must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. I waive any statute of limitations to the contrary." Plaintiff signed the application and returned it.

In mid-September 2007, plaintiff was hired as a Helper, an at-will position. In November 2008, he was transferred to another location and promoted to Driver. Early in April 2010, plaintiff injured his knee in a work-related accident, requiring surgery and physical therapy. On October 1, 2010, two days after he returned to full-duty work, plaintiff was terminated. Although informed that his termination was due to a company-wide reduction in force, plaintiff asserted that others with less seniority or distinguishing features were retained.

On July 5, 2011, nearly seven months after his termination, plaintiff filed a complaint against defendant in Superior Court, alleging, in part, illegal employment discrimination based on actual or perceived disability, in violation of the LAD. Defendant moved for summary judgment based on the waiver provision, asserting that plaintiff's complaint was filed beyond the agreed-upon six-month limitations period. Plaintiff contended, in part, that the provision was unconscionable and unenforceable. The trial court granted summary judgment to defendant, finding that the provision was clear and unambiguous, and that the contractual shortening of the limitations period was neither unreasonable nor against public policy.

Plaintiff appealed, and the Appellate Division affirmed. Rodriguez v. Raymours Furniture Co., 436 N.J. Super. 305 (App. Div. 2014). Although the panel found that the employment application amounted to a contract of adhesion, it determined that it was enforceable in light of its clear, unambiguous language and the ample time plaintiff had to review it. The panel further held that, absent a controlling prohibitory statute, parties may modify a statute of limitations if, as here, the shortened time period is reasonable and does not violate public policy. The Court granted plaintiff's petition for certification. 220 N.J. 100 (2014).

**HELD:** A private agreement that frustrates the LAD's public-purpose imperative by shortening the two-year limitations period for private LAD claims cannot be enforced.

1. New Jersey's decisional law respects that private interests are intertwined with the public interests furthered by the LAD. Here, the Appellate Division focused on the general principle of the existence of a broad right to contract, but it did not sufficiently assess the public-interest purpose of the LAD, which seeks unequivocally to eradicate discrimination against any of New Jersey's inhabitants. To enforce the LAD and further this goal, the Legislature created a division now known as the Division on Civil Rights (DCR), where aggrieved parties can file discrimination complaints. In 1979, the LAD was amended to also provide for a right of action in Superior Court. Because the LAD is silent as to a limitations period for LAD claims, the Court, in Montells v. Haynes, 133 N.J. 282 (1993), found that a two-year limitations period comported with the purpose of the LAD and provided needed uniformity among claims. In the twenty-three years since Montells, the Legislature has registered tacit approval of the two-year period by failing to take legislative action disavowing it. (pp. 14-20)

2. To pursue relief under the LAD, a person alleging discrimination can file a complaint with the DCR within six months of the cause of action or file a direct suit in the Superior Court within two years. Permitting an aggrieved party to first bring a claim to the DCR furthers important public policies, such as the settlement of litigation through

alternative dispute resolution and the prosecution of alleged discrimination. However, although the DCR process is intended to provide more timely resolution than an action in Superior Court, the Legislature recognized that this goal may not always be met. Consequently, an injured party may withdraw its DCR complaint at any time before the DCR makes a final decision and proceed instead in Superior Court. This allows a litigant to potentially use both forums, subject to the outer limit of the two-year limitations period for court actions. (pp. 20-23)

3. This cases raises a question of first impression. Although the issue arises in a private action, this matter, like all LAD actions, also advances and fulfills the legislatively declared public interest in the elimination of discrimination. Because, more than two decades after Montells, the two-year limitations period is woven into the fabric of the LAD, a contractual shortening of the period must be examined for its substantive impact to determine if it is impliedly prohibited by the LAD scheme. The availability of two avenues of relief in the event the administrative process extends too long reflects the Legislature's understanding that public policy requires a lengthier period of time to obtain LAD relief. Its tacit approval of the two-year limitations period accommodates these two avenues. Consequently, a shortening of that period undermines and thwarts the legislative scheme by effectively divesting the aggrieved party of the right to pursue an administrative remedy. Additionally, since claimants may not immediately be aware of their cognizable claims, shortening of the period will effectively eliminate claims and frustrate the public policy of uniformity and certainty. Conversely, the shortened period may also compel attorneys to file premature LAD actions. Finally, the two-year period also allows an employer the opportunity to protect itself and promote the eradication of discrimination by investigating and resolving complaints before an LAD claim is filed. (pp. 24-28)

4. While New Jersey law recognizes that an individual may agree by contract to submit a statutory LAD claim to alternative dispute resolution, the contract must nevertheless be examined to ascertain whether substantive rights have been precluded. Here, the contractual shortening of the limitations period effectively foreclosed plaintiff's substantive right to utilize all available avenues of relief since there was not enough time to choose to begin with a filing with the DCR. In light of the interplay between the LAD's administrative remedy and the right to file in Superior Court, as well as the joint public and private interests advanced by a claim pursued in either forum, contractual shortening of the two-year limitations period for a private action is contrary to public policy. The DCR remedy must remain accessible and vibrant, and the anti-discrimination public policy to be fulfilled through LAD claims may not be contractually curtailed. Thus, the waiver provision here is unenforceable. This decision is rooted in the unique importance of New Jersey's LAD and the necessity for its effective enforcement. The Court notes that at least two other states have deemed similar provisions contrary to public policy. (pp. 28-32)

5. Although the Court's holding is not derived from consideration of plaintiff's unconscionability argument, it adds that courts may refuse to enforce unconscionable contracts or discrete contract provisions. In the instant matter, because the provision at question was contained within an employment application and plaintiff could not bargain, the contract was one of adhesion, containing indicia of procedural unconscionability. Because further analysis would require consideration of, among other factors, the public interests affected by the contract, had this matter been analyzed through the prism of an unconscionability analysis, the Court would have reached the same outcome based on the anti-discrimination concerns expressed in the LAD. (pp. 32-34)

The judgment of the Appellate Division is **REVERSED**.

**CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion. JUSTICE FERNANDEZ-VINA did not participate.**

SERGIO RODRIGUEZ,

    Plaintiff-Appellant,

       v.

RAYMOURS FURNITURE COMPANY,
INC., a corporation, t/a
RAYMOUR & FLANIGAN,

    Defendant-Respondent.


       Argued December 1, 2015 – Decided June 15, 2016

       On certification to the Superior Court, Appellate Division, whose opinion is reported at 436 N.J. Super. 305 (App. Div. 2014).

       Alan L. Krumholz argued the cause for appellant (Krumholz Dillon, attorneys).

       Patricia A. Smith argued the cause for respondent (Ballard Spahr, attorneys; Ms. Smith, Edward T. Groh, and Amy L. Bashore, on the briefs).

       Bennet D. Zurofsky argued the cause for amicus curiae National Employment Lawyers Association-New Jersey (Mr. Zurofsky, Schall & Barasch, and Sarah Fern Meil, attorneys; Mr. Zurofsky, Ms. Meil, and Richard M. Schall, on the brief).

       John E. Keefe, Jr., argued the cause for amicus curiae New Jersey State Bar Association (Miles S. Winder III, President, attorney; Paris P. Eliades, of counsel; Mr. Keefe, Mr. Eliades, Stephen T. Sullivan, Jr., Liana M. Nobile, and Javier J. Diaz, on the brief).

Nancy Erika Smith argued the cause for amicus curiae New Jersey Association for Justice (Smith Mullin, attorneys; Ms. Smith and Neil Mullin, of counsel; Ms. Smith, Mr. Mullin, and Virginia A. Pallotto, on the brief).

Ronald K. Chen argued the cause for amicus curiae American Civil Liberties Union of New Jersey (Rutgers Constitutional Rights Clinic Center for Law & Justice, attorneys; Mr. Chen, Edward L. Barocas, Jeanne M. LoCicero, and Alexander R. Shalom, of counsel and on the brief).

Martin W. Aron argued the cause for amicus curiae Academy of New Jersey Management Attorneys (Jackson Lewis, attorneys; Mr. Aron and Maggie L. Gousman, of counsel and on the brief).

JUSTICE LaVECCHIA delivered the opinion of the Court.

In this appeal we address whether the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49 -- a law established to fulfill a public-interest purpose -- can be contravened by private agreement.

Here an employment application contained a provision requiring the applicant, if hired, to agree to bring any employment-related cause of action against the employer within six months of the challenged employment action and waive any statute of limitations to the contrary. After being hired and employed for a period of time, plaintiff filed a complaint in Superior Court against his former employer, claiming among other

things an LAD violation premised on disability discrimination. The trial court dismissed the action, enforcing the six-month limitations period for filing that employment-related claim, and the Appellate Division affirmed.

We reverse. The challenged provision cannot be viewed as a private contractual agreement by which private parties contract to limit private claims by shortening the generally applicable statute of limitations for such actions. The cause of action that plaintiff brings is factually premised on his employment relationship, but it is not a simple private claim. Plaintiff alleges an LAD violation -- a law designed for equal parts public and private purposes.

The LAD plays a uniquely important role in fulfilling the public imperative of eradicating discrimination. One searches in vain to find another New Jersey enactment having an equivalently powerful legislative statement of purpose, along with operative provisions that arm individuals and entities with formidable tools to combat discrimination not only through their use but also by the threat of their use. There is a huge incentive for employers to thoroughly investigate and respond effectively to internal complaints in order to limit or avoid liability for workplace discrimination. Responsible employers are partners in the public interest work of eradicating discrimination, but such responsible behavior takes time. A

3

shortened time frame for instituting legal action or losing that ability hampers enforcement of the public interest.

Presently, a dual-enforcement scheme allows litigants to bring direct suit or utilize the resources of the Division on Civil Rights (DCR).  Although the LAD has private and administrative remedies, election of either statutorily created course of action furthers the public and private purpose of the LAD -- preventing and eliminating discrimination.  See Fuchilla v. Layman, 109 N.J. 319, 334 (stating that LAD seeks "nothing less than the eradication of the cancer of discrimination" (quotation marks and citations omitted), cert. denied, 488 U.S. 826, 109 S. Ct. 75, 102 L. Ed. 2d 51 (1998)).  Restricting the ability of citizens to bring LAD claims is antithetical to that societal aspiration and defeats the public policy goal.

We hold that a private agreement that frustrates the LAD's public-purpose imperative by shortening the two-year limitations period for private LAD claims cannot be enforced.

I.

In August 2007, plaintiff Sergio Rodriguez, recently laid off from his previous job, sought to apply for the position of Helper with defendant, Raymours Furniture Company, Inc., t/a Raymour & Flanigan.  He went to defendant's Customer Service Center in Monmouth Junction and obtained a job application, which was written in English.  Plaintiff, a native of Argentina

4

who was not proficient in the English language, brought the application home.  A friend assisted plaintiff in filling out the application, translating sections in which plaintiff had to provide information.

The bottom of the second (and last) page of the application contained a section titled, "Applicant's Statement - READ CAREFULLY BEFORE SIGNING – IF YOU ARE HIRED, THE FOLLOWING BECOMES PART OF YOUR OFFICIAL EMPLOYMENT RECORD AND PERSONNEL FILE."  That section contained the following paragraphs:

> I understand this employment application is not a promise of an offer of employment. I further understand that should I receive and accept an offer of employment, my employment does not constitute any form of contract, implied or expressed, and such employment will be terminable at will either by myself or Raymour & Flanigan upon notice of one party to the other. My continued employment would be dependent on satisfactory performance and continued need for my services as determined by Raymour & Flanigan.
>
> I authorize investigation of all statements contained in this application. I understand that misrepresentation or omission of facts called for are grounds for a refusal to offer employment or a cause of dismissal if hired.
>
> **I AGREE THAT ANY CLAIM OR LAWSUIT RELATING TO MY SERVICE WITH RAYMOUR & FLANIGAN MUST BE FILED NO MORE THAN SIX (6) MONTHS AFTER THE DATE OF THE EMPLOYMENT ACTION THAT IS THE SUBJECT OF THE CLAIM OR LAWSUIT.  I WAIVE ANY STATUTE OF LIMITATIONS TO THE CONTRARY.**
>
> **I WAIVE TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, OR RELATING TO, MY EMPLOYMENT WITH RAYMOUR & FLANIGAN, INCLUDING CLAIMS OF**

5

**WRONGFUL OR RETALIATORY DISCIPLINE OR DISCHARGE; CLAIMS OF AGE, SEXUAL, SEXUAL ORIENTATION, RELIGIOUS, PREGNANCY OR RACIAL DISCRIMINATION, CLAIMS UNDER TITLE VII OF THE CIVIL RIGHTS ACT, TITLE IX, AMERICANS WITH DISABILITIES ACT, AGE DISCRIMINATION IN EMPLOYMENT ACT, EMPLOYEE RETIREMENT INCOME SECURITY ACT, FAIR LABOR STANDARDS ACT, AND ALL OTHER APPLICABLE NON-DISCRIMINATION, EMPLOYMENT OR WAGE AND HOUR STATUTES.**

Plaintiff returned the signed application to the Customer Service Center the next day. When asked by the manager on duty if he had any questions about the application, plaintiff responded in the negative. Plaintiff later certified in this action that he "ha[d] no understanding of the term Statute of Limitations," that he "d[id] not know what the word 'waive' mean[t]," and that he "did not understand that [his] rights would be limited in case the company treated [him] illegally or unfairly."

In mid-September 2007, plaintiff was hired by defendant as a Helper. There is no dispute that his position with the company was at-will. He worked at the Monmouth Junction location, until November 2008, when he transferred to a Customer Service Center in Randolph.

At some point after transferring to the Randolph location, plaintiff was promoted to Driver.[1] For his new position,

---

[1] It is unclear precisely when plaintiff was promoted. The record as it stands contains conflicting information.

plaintiff was required to fill out an additional employment application. That second application did not contain the same provision -- limiting the applicant's time for filing any potential employment-related claims -- that the first application did.

Early in April 2010, plaintiff injured his knee in a work-related accident during a furniture delivery. Plaintiff ceased working shortly after his injury. Defendant reported the accident to its third-party workers' compensation benefits administrator. The injury was determined to be compensable and payments were made for plaintiff's medical treatments.

During the summer of 2010, plaintiff underwent surgery and physical therapy for his knee injury. He was cleared to return to light-duty work effective September 14, 2010, for a period of two weeks. On October 1, 2010, two days after resuming full-duty work, plaintiff was terminated. His supervisor informed him that business was slow. Defendant maintains that it laid plaintiff off as part of a company-wide reduction in force (RIF). Plaintiff disputes that a RIF was the reason for his termination when others with less seniority or distinguishing features were retained for service. Plaintiff filed a Claim Petition with the Division of Workers' Compensation on June 9, 2011.

Thereafter, on July 5, 2011, nearly seven months after being terminated, plaintiff filed a complaint against defendant in Superior Court, which action gives rise to this appeal. His complaint alleges illegal employment discrimination based on an actual or perceived disability, in violation of the LAD, and retaliation for obtaining worker's compensation benefits, in violation of the Workers' Compensation Act.

Defendant filed a motion for summary judgment, arguing that plaintiff had agreed, pursuant to the waiver provision in defendant's employment application, to limit to six months the statute of limitations for any employment-related claims against defendant. Plaintiff responded that the provision was unconscionable and unenforceable and, alternatively, that his second application for the Driver position, which did not contain a similar limiting provision, constituted a novation. The trial court rejected plaintiff's arguments and granted summary judgment to defendant. According to the trial court, the provision was clear and unambiguous, citing particularly its capital letters and bold print, which commanded the attention of the reader. The trial court also concluded that the contractual shortening of the statute of limitations was neither unreasonable nor against public policy.

Plaintiff appealed, again arguing that the provision was unconscionable and void as against public policy and that the

second Driver application constituted a novation.  The Appellate Division judgment affirmed the trial court's grant of summary judgment.  Rodriguez v. Raymours Furniture Co., 436 N.J. Super. 305, 311-12 (App. Div. 2014).

The appellate panel recognized that plaintiff's employment application amounted to a contract of adhesion but found it nonetheless enforceable, pointing to the clear, unambiguous language of the application and the fact that plaintiff had ample time to review the application when he took it home.  Id. at 323-24.

The panel also rejected plaintiff's argument that, because a two-year statute of limitations applies to LAD claims, the time frame for bringing such actions could not be modified by private contract.  Id. at 319.  The panel held that, absent a controlling prohibitory statute, parties may modify a statute of limitations so long as the shortened time period is reasonable. The Appellate Division relied on Eagle Fire Protection Corp. v. First Indemnity of America Insurance Co., 145 N.J. 345 (1996), and Mirra v. Holland America Line, 331 N.J. Super. 86 (App. Div. 2000), for support in concluding that generally parties can shorten a statute of limitations so long as the shortened period is reasonable and does not violate public policy.  Id. at 319-20.

9

The panel held that both of those conditions were satisfied here.  There was no express prohibitory statute, and the panel determined that the six-month period was reasonable in length. The panel noted that the statute of limitations for bringing an LAD claim by means of the administrative process offered through the DCR, as opposed to filing a complaint in Superior Court, also was six months.  Id. at 320.  According to the panel, therefore, contractually shortening the statute of limitations to six months did not preclude plaintiff from pursuing any remedy offered under the LAD.  Id. at 322.

Finally, plaintiff's novation argument was summarily rejected on appeal.  Id. at 329.

We granted plaintiff's petition for certification.  220 N.J. 100 (2014).  We also granted amicus curiae status to the New Jersey State Bar Association, the New Jersey Association for Justice, the American Civil Liberties Union of New Jersey, the National Employment Lawyers Association, and the Academy of New Jersey Management Attorneys.

II.

A.

Plaintiff's first line of argument rests on principles of contract unenforceability based on unconscionability.  He contends that a job application with a provision shortening the statute of limitations for any future employment-related claims

10

is a contract of adhesion, and that in this instance that contract of adhesion is both procedurally and substantively unconscionable and unenforceable.

Procedurally, plaintiff emphasizes that, unlike commercial contracts negotiated between sophisticated parties, an employment application consists of an inherent imbalance of power:  Applicants have varying degrees of financial security and education levels, which may influence their understanding of the contract and prevent them from asking questions of potential employers for fear of not being hired.

Substantively, plaintiff argues that the provision frustrates public policy.  Plaintiff argues that the LAD was enacted to protect employees, and that allowing private companies to create their own periods of limitation overrides the legislative policy of encouraging discrimination-free workplaces.  Plaintiff points out that this Court in Montells v. Haynes, 133 N.J. 282 (1993), interpreted the LAD to have a two-year statute of limitations and the Legislature has given that interpretation its imprimatur based on more than twenty years of silence in the wake of Montells.  Plaintiff highlights the LAD's administrative recourse through the DCR.  Allowing such a constricted contractual limitations period, plaintiff says, frustrates the LAD remedial scheme overall and limits the option to pursue a claim through the DCR.  In other words, the

11

shortened time frame precludes plaintiff from exercising both options that the LAD otherwise makes available within the two-year time frame for filing an LAD claim in Superior Court.

In the event that the Court were to conclude that the limitations period is enforceable, plaintiff's remaining argument focuses on whether the trial court was correct in determining that his second employment application (for the position of Driver) did not constitute a novation. Plaintiff maintains that the question should have been presented to the jury and not dismissed on summary judgment.

### B.

Defendant asserts that the employment application is neither unconscionable nor unenforceable. Relying on Eagle Fire and Mirra, defendant argues that it is well settled in New Jersey that parties can privately contract to shorten statutes of limitations, and notes further a New York appellate determination to enforce the same provision at issue here. Just as the trial and appellate courts found, defendant contends that the waiver was clear and unambiguous, rendering it easy to read and understand.

Because no statute to the contrary prohibits a contractual provision from shortening the time for suit to six months, defendant argues that parties can freely contract to modify statutory rights. Defendant asserts that the provision does not

12

interfere with the DCR's role in investigating and settling LAD claims because, unlike the federal scheme, New Jersey does not have an administrative exhaustion requirement that in itself could take six months to pursue. According to defendant, plaintiffs are free either to pursue the administrative remedy or to file suit in Superior Court, so long as they act within six months.

C.

Amici New Jersey State Bar Association, the New Jersey Association for Justice, the American Civil Liberties Union of New Jersey, and the National Employment Lawyers Association all support plaintiff's arguments and express concern about allowing a private agreement to modify a public law by constricting the otherwise applicable limitations period to pursue that statutory claim. Their arguments focus on public policy and the singular public-interest importance of the LAD.

Amicus curiae Academy of New Jersey Management Attorneys argues that shortening the two-year statute of limitations for LAD claims is not against public policy and is within private parties' right to contract. Decisions are cited from other jurisdictions finding shortened limitations periods reasonable and enforceable. Finally, the Academy argues that shortening the time for filing suit encourages employees' quick pursuit of claims, which benefits employers, employees, and the public.

III.

Referencing the general principle that a broad private right to contract exists, the appellate panel in this matter found that principle to govern -- essentially because it could find no "controlling statute to the contrary" within the LAD that prohibited a shortened limitations period. Rodriguez, supra, 436 N.J. Super. at 319 (quoting Order of United Commercial Travelers of Am. v. Wolfe, 331 U.S. 586, 608, 67 S. Ct. 1355, 1365, 91 L. Ed. 1687, 1700 (1947)). The panel had available to it, and cited, only cases that generally dealt with private agreements to shorten statutes of limitations pertaining to common law actions and cases that did not engage in any searching analysis of whether public policy was contravened by the shortening of a limitations period for a public interest statute. See id. at 319-20.[2] Consequently, the appellate panel determined that it had no basis on which to interfere with the substance of the parties' contract in this matter. In viewing the analysis as nothing more than a search for a preempting statute, the panel did not sufficiently assess the public-

---

[2] The only New Jersey decision that the Appellate Division had available to cite that concerned a statutory claim was Mirra, supra, 331 N.J. Super. 86. But that decision relies on prior cases approving the shortening of non-statutory common law actions. Id. at 90-91.

14

interest purpose of the LAD.  The LAD deserves a closer assessment.

A.

The LAD occupies a privileged place among statutory enactments in New Jersey.  In 1945, prior to passage of our modern state constitution, the Legislature enacted the LAD to prevent and eliminate practices of discrimination based on race, creed, color, national origin or ancestry, and created an enforcement agency to achieve that goal.  L. 1945, c. 169.

The LAD is an express exercise of the state's police powers.  N.J.S.A. 10:5-2.  In relying on police powers when enacting the LAD, the Legislature recognized nothing less than a civil right.  The exercise of police power was deemed necessary "for the protection of the public safety, health and morals and to promote the general welfare and in fulfillment of the provisions of the Constitution of this State guaranteeing civil rights."  Ibid.

In justifying the LAD's enactment, the Legislature voiced its reasons for declaring abhorrence to discrimination in this state.  It stated that practices of forms of discrimination against any of New Jersey's inhabitants "are matters of concern to the government of the State, and that such discrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and

15

foundation of a free democratic State[.]" N.J.S.A. 10:5-3. Further, the Legislature declared "its opposition to such practices of discrimination when directed against any person" for the forbidden reasons, and certain others connected by family, or employment, or otherwise listed, "in order that the economic prosperity and general welfare of the inhabitants of the State may be protected and ensured." Ibid. And connecting the harm to the individual to the harm that is visited on the State and the public interest by such actions, the Legislature did not mince words: "The Legislature further finds that because of discrimination, people suffer personal hardships, and the State suffers a grievous harm." Ibid.

Accordingly, it has long been recognized that the LAD seeks unequivocally to "eradicate" discrimination. Jackson v. Concord Co., 54 N.J. 113, 124 (1969). Our decisional law respects that private interests are intertwined with the public interests furthered by the LAD. See e.g., Lehmann v. Toys 'R' Us, 132 N.J. 587, 600 (1993) (stating that LAD was enacted "to protect not only the civil rights of individual aggrieved employees but also to protect the public's strong interest in a discrimination-free workplace" (citation omitted)). As further proof that eradication of discrimination is a public interest, the Legislature cast a wide net in crafting what is included among LAD violations. The LAD is violated not only when an

16

individual of a protected class is discriminated against, but also when reprisal is taken against any person who opposed such actions or practices forbidden by the LAD or who aided or encouraged any person in the exercise or enjoyment of any right granted or protected under the LAD. N.J.S.A. 10:5-12(d).

B.

To "prevent and eliminate" discrimination, the Legislature created a division now known as the Division on Civil Rights. See L. 1945, c. 169, § 6. Recognizing that "prevention of unlawful discrimination vindicates not only the rights of individuals but also the vital interests of the State," the DCR enforces the LAD to further both. Ibid. The LAD originally "provided for the filing of complaints with the Division Against Discrimination," L. 1945, c. 169, § 12, which was replaced by the DCR, L. 1960, c. 59, § 3. In 1979, the LAD was amended to provide for a right of action in the Superior Court, in addition to the administrative remedy originally available. L. 1979, c. 404, § 1.

In Montells, supra, 133 N.J. at 285, this Court determined what statute of limitations would apply to LAD claims because the LAD was silent as to a limitations period. Montells held that the two-year limitations period of N.J.S.A. 2A:14-2, which is applicable in personal injury actions, comported with the purpose of the LAD and, importantly, provided needed uniformity,

17

regardless of the underlying factual nature of the particular LAD claim. Id. at 291-92. Twenty-three years later, the Legislature has registered its tacit approval of that determination. The lack of legislative action to signal disavowal of the two-year limitations period is significant in light of the many times since Montells was decided that the Legislature has taken affirmative steps to amend the LAD in other respects. See L. 1996, c. 126, §§ 1, 2, 4-10; L. 1997, c. 179, § 1; L. 2001, c. 254, §§ 1, 2; L. 2001, c. 385, § 1; L. 2002, c. 82, §§ 1-4, 6; L. 2003, c. 72, § 1; L. 2003, c. 180, §§ 3-25 ; L. 2003, c. 246, §§ 11, 12; L. 2003, c. 293, § 1; L. 2004, c. 130, § 37; L. 2005, c. 258, § 1; L. 2006, c. 88, §§ 1-4; L. 2006, c. 100, §§ 1-15; L. 2006, c. 103, §§ 1, 88; L. 2007, c. 325, §§ 1, 2; L. 2009, c. 205, § 1; L. 2013, c. 154, § 1; L. 2013, c. 220, §§ 1, 2.

Indeed, the LAD has been amended many times since originally enacted. The Legislature's activity has been in one direction. It has acted only to strengthen the LAD, adding more protections and for more classes of individuals. See L. 1951, c. 64, § 1 (adding service in Armed Forces of United States as protected class); L. 1962, c. 37, § 2 (adding age as protected class); L. 1970, c. 80, § 8 (adding marital status and sex as protected classes); L. 1972, c. 114, § 2 (adding disability as protected class); L. 1977, c. 456, § 5 (adding public access to

18

facilities for service and guide dog trainers); L. 1980, c. 46, §§ 4, 5 (extending disability protections to deaf persons); L. 1981, c. 185, § 1 (extending disability protections to persons with blood traits for numerous disorders); L. 1983, c. 412, § 2 (imposing penalties for violating LAD); L. 1990, c. 12, § 1 (authorizing recovery of emotional distress damages); L. 1990, c. 12, § 2 (providing jury trials in LAD cases); L. 1991, c. 493, § 1 (amending definition of handicapped to include persons with AIDS and HIV); L. 1991, c. 519, § 1 (adding affectional or sexual orientation as protected class); L. 1992, c. 146, § 1 (adding familial status as protected class); L. 1996, c. 126, § 5 (making it unlawful to discriminate for refusing to submit to genetic testing or refusing to reveal genetic testing information); L. 1997, c. 179, § 1 (making it unlawful to discriminate based on genetic information); L. 2001, c. 385, § 1 (making it unlawful to discriminate against employee who displays American flag); L. 2002, c. 82, § 3 (making it unlawful for landlords to discriminate based on source of income or age of children); L. 2003, c. 180, § 12 (providing "substantially same protections against discrimination as provided under Federal Fair Housing Act"); L. 2003, c. 246, § 12 (adding protections for individuals in domestic partnerships); L. 2003, c. 72, §§ 2, 3 (providing separate standards for handicapped access in public buildings versus multi-family dwellings); L.

19

2006, c. 100, § 2 (adding gender identity or expression as protected class); L. 2006, c. 103, §§ 1, 88 (adding protections for individuals in civil unions); L. 2013, c. 220, § 1 (requiring accommodations for pregnant women and women recovering from childbirth).

C.

To pursue relief under the LAD, a person alleging discrimination can file a complaint with the DCR within six months of the cause of action or file a direct suit in the Superior Court within two years. N.J.S.A. 10:5-13; N.J.S.A. 10:5-18; see Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 131 (2001) ("[T]here is a clear mandate of public policy permitting persons alleging violations of the LAD to proceed administratively or judicially." (quoting Ackerman v. The Money Store, 321 N.J. Super. 308, 324 (Law Div. 1998))). However, the Legislature requires an election of remedy for an LAD action. Once a party files a Superior Court action, he or she may not file a complaint with the DCR while that action is pending. N.J.S.A. 10:5-13. The same is true if an aggrieved party first files with the DCR; during the pendency of the matter with the DCR, an aggrieved party cannot file with the Superior Court. N.J.S.A. 10:5-27. Once a finding is made in either the Superior Court or the DCR, "the final determination therein shall exclude any other action, civil or

20

criminal, based on the same grievance of the individual

concerned."  Ibid.[3]

Permitting an aggrieved party to bring a discrimination

claim to the DCR (within six months) furthers important public

policies of this state.  First, it allows for an alternative

dispute resolution of the discrimination claim, and New Jersey

has a "strong public policy in favor of the settlement of

litigation."  Gere v. Louis, 209 N.J. 486, 500 (2012); see also

Bell Tower Condo. Ass'n v. Haffert, 423 N.J. Super. 507, 510

(App. Div.) (noting "the long-established public policy of this

State" favoring alternative dispute resolution), certif. denied,

210 N.J. 217 (2012).  Discrimination claims take time and

require resources to pursue.  Investigation, discovery between

the parties, and possible conciliation or settlement discussions

---

[3] The LAD does not contain an administrative exhaustion requirement that a party first file his or her complaint with the DCR before filing suit in Superior Court.  N.J.S.A. 10:5-13. Because of that, our scheme differs from the federal employment discrimination scheme, which requires a party to first file his or her complaint with the EEOC within 180 days and receive a right-to-sue letter before commencing litigation.  42 U.S.C.A. § 2000e-5(e), (f)(1).  An aggrieved party would therefore be foreclosed from filing suit under federal law if he or she had agreed to a shortened six-month period of limitations.  For those reasons, federal courts have invalidated a six-month period if there is an administrative exhaustion requirement. Our statutory scheme differs and accordingly our analysis does as well.  However, the absence of an administrative exhaustion requirement does not answer whether a contractually shortened limitations period contravenes the public-interest purpose advanced in our anti-discrimination scheme.

can prove lengthy and expensive.  For those reasons, the LAD expects that the DCR will play an important role.  When a party elects to purse a claim administratively, he or she is "availing himself [or herself] of a means of redress normally swifter and less expensive than formal litigation."  Sprague v. Glassboro State Coll., 161 N.J. Super. 218, 226 (App. Div. 1978); see N.J.S.A. 10:5-14, -15, -16, -17, -19.  Thus, the DCR's ability to evaluate and investigate discrimination claims is consistent with the public policy of our State that favors alternative dispute resolution.

Although the DCR process is designed to provide more timely resolution than an action in Superior Court, that aspirational goal may not always be met.[4]  "When that means of redress fails to achieve those goals, an injured party is entirely free to proceed in Superior Court . . . . and [the] pending complaint before the DCR may be withdrawn at any time provided that the DCR has not made a final determination."  Wilson v. Wal-Mart

---

[4]  The administrative remedy of the LAD may not always work swiftly.  The Legislature anticipated that a DCR investigation may require more than six months from the filing of the complaint with the DCR.  If the DCR investigation extends beyond six months from the filing of the complaint, the complainant may request that the matter be transferred for a hearing with the Office of Administrative Law and, upon such request, the DCR "shall file the action with the Office of Administrative Law," unless the DCR has already determined there is no probable cause to credit the allegations.  N.J.S.A. 10:5-13.

22

<u>Stores</u>, 158 <u>N.J.</u> 263, 270 (1999).  An aggrieved party can thus avail himself or herself of more than one forum as a complaint winds its way through the administrative and judicial process.  The legislatively designed scheme acknowledges and allows a litigant to potentially utilize both forums, subject to the outer limit of the two-year limitations period for bringing an action in court, when the administrative procedure lags.

Second, permitting the aggrieved person to bring his or her claim to the DCR allows the DCR to perform the function that the LAD mandates -- to prevent and eliminate discrimination.  See <u>L.</u> 1945, <u>c.</u> 169.  In addition to making the aggrieved party whole, the DCR has responsibility for curbing the behavior of the discriminator.  When a complaint is brought to the DCR, the DCR's role is not simply to stand in the shoes of the aggrieved party and bring the claim on his or her behalf.  The DCR "has a completely separate law enforcement interest in prosecuting the alleged discrimination[.]"  <u>Dixon v. Rutgers</u>, 110 <u>N.J.</u> 432, 459 (1988).  The DCR represents the aggrieved <u>public</u>, which has been injured by the perpetuation of discrimination that our society deems intolerable.

IV.

A.

23

This case raises for us a question of first impression. Undoubtedly, there is a strong belief in this state, as elsewhere, in the freedom to contract.

> [Persons] of "full age and competent understanding" have the "utmost liberty of contracting." Contracts so freely and voluntarily made, in the absence of express or implied prohibition, are sacred and are enforced by courts of justice. And courts do "not lightly interfere with this freedom of contract."
>
> [Sparks v. St. Paul Ins. Co., 100 N.J. 325, 335 (1985) (quoting Printing Registering Co. v. Sampson, 19 Eq. 462, 465 (quoted in Driver v. Smith, 89 N.J. Eq. 339, 359 (1918))).]

But the right of freedom to contract "is not such an immutable doctrine as to admit of no qualification." Henningsen v. Bloomfield Motors, Inc., 32 N.J. 358, 388 (1960). The right must recede to "prevent its abuse, as otherwise it could be used to override all public interests." Ibid. (quoting Morehead v. New York ex rel. Tipaldo, 298 U.S. 587, 627, 56 S. Ct. 918, 80 L. Ed. 1347, 1364 (1936) (Hughes, C.J., dissenting)).

Here we have the public interest to consider. The LAD exists for the good of all the inhabitants of New Jersey. N.J.S.A. 10:5-3. The LAD and its processes are imbued with a public-interest agenda. See supra at ___ (slip op. at 15-17). Although the question before us arises in a private action under the LAD, this matter, like all LAD actions, concerns more than a purely private cause of action affecting only private interests.

24

The private right of action authorized by the LAD advances and fulfills the private and legislatively declared public interest in the elimination of discrimination.  N.J.S.A. 10:5-2, -3. Hence a contractual limitation on an individual's right to pursue and eradicate discrimination of any form prohibited under the LAD is not simply shortening a limitations period for a private matter.  If allowed to shorten the time for filing plaintiff's LAD action, this contractual provision would curtail a claim designed to also further a public interest.  As to the LAD, there is a marriage of interests that cannot be divorced.

In respect of the limitations period for LAD actions, a two-year period is the span of time within which an LAD claim may be brought in Superior Court.  Montells so holds, but there is more to it than that.  The Legislature's more than two-decades-long acceptance of the two-year limitations period established by Montells for LAD claims has woven that limitations period into the fabric of the LAD.  It is part of the statutory program and how it operates.  Thus, a shortening of that limitations period must be examined for its substantive impact to determine whether any shortening is impliedly prohibited by the LAD scheme.

First, it bears immediate consideration that shortening the time permitted for bringing an LAD action in Superior Court directly impacts and undermines the integrated nature of the

25

statutory avenues of relief and the election of remedies that are substantively available to victims of discrimination under the LAD.

An LAD complainant has two years to file his or her action in Superior Court, and, during that time, the individual may choose between the two means of relief that the LAD authorizes. See N.J.S.A. 10:5-13. The Legislature allows an LAD litigant to take advantage of the less costly and more efficient process offered through the administrative remedy, but, if that process extends too long, the aggrieved individual can opt to withdraw his or her administrative complaint and file in Superior Court, using that action as his or her means to pursue vindication of the private and public interest in eradicating and remedying the challenged discriminatory practice. Ibid. Explicitly then, the Legislature understood and accepted that public policy requires a more lengthy period of time to obtain LAD relief through that permissible combination of avenues.

The Legislature's tacit approval of the two-year limitations period accommodates the two processes available under the LAD. A shortening of the limitations period applicable under law undermines and thwarts the legislative scheme that includes the DCR remedy as a meaningful option. In fact, the instant contractual limitations period works as an effective divestiture of the right to pursue an administrative

26

remedy.  The two forums that the LAD makes available both protect the public interest in identifying, rectifying, and eliminating discrimination.  That public interest in rooting out forbidden discrimination may not be lightly contracted away by private arrangement.

Second, a statute of limitations period short of two years effectively eliminates claims.  As a practical matter, it takes time for an individual to bring his or her claim to an attorney.  The individual may not immediately realize that he or she has been a victim of discrimination.  See, e.g., Henry v. N.J. Dep't of Human Servs., 204 N.J. 320, 335-39 (2010) (recognizing that claimants in LAD cases may not be immediately aware of their cognizable claims).  Having arrived at an attorney's office, an individual may not realize that he or she signed or agreed to a waiver of the two-year limitations period.  The two-year period established in Montells, supra, was designed purposefully to impose uniformity and certainty.  133 N.J. at 291-92.  The contractual shortening of the limitation period will frustrate that public policy, and lead to the dismissal of otherwise meritorious LAD claims.

Conversely, a shortened statute of limitations might compel an attorney to file a premature LAD action, whereas a thorough investigation might reveal a lack of a meritorious claim.  One cannot ignore that an attorney's investigation into the

27

purported claim may take many months after the client arrives for a consultation. Even the LAD itself acknowledges that the DCR investigatory process may take more than six months, and it includes a means for a complainant to accelerate the matter directly to the OAL after 180 days. N.J.S.A. 10:5-13. Such necessary steps and more, which are involved in bringing a complaint to an attorney, and investigating the matter, must be considered in weighing the substantive effect of any contractual shortening of the otherwise applicable two-year statute of limitations for LAD actions.

Moreover, it cannot be overlooked that our case law has built in powerful incentives for employers to first receive workplace complaints, investigate them, and respond appropriately to limit their liability. See Aguas v. State, 220 N.J. 494, 516-17 (2015). Any shortening of the current two-year statute of limitations period imposed by law would seriously affect an employer's ability to protect itself. Employers are partners in promoting the public policy of this state to deter and eradicate forbidden discrimination.

Our law does recognize that an individual may agree by contract to submit his or her statutory LAD claim to alternative dispute resolution and therefore different processes. See Garfinkel, supra, 168 N.J. at 131 (acknowledging LAD claim may be submitted to arbitration forum). However, in permitting the

28

submission of an LAD claim to an alternative forum by operation of contract, the contract is examined to determine whether substantive rights have been precluded. See Martindale v. Sandvik, Inc., 173 N.J. 76, 93-94 (2002) (holding same and noting that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral rather than a judicial forum" (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 105 S. Ct. 3346, 3354, 87 L. Ed. 2d 444, 456 (1985))). In this instance, plaintiff's substantive right to utilize all available avenues of relief, in tandem, is effectively foreclosed. As the six-month period runs, litigants would be forced to choose between filing with the DCR or filing in Superior Court because there would not be enough time to choose to begin with a filing with the DCR. Further, the shortening of the applicable statute of limitations, if allowed here, results in cutting off the opportunity to fulfill the public interest in eradicating discrimination.

Review of the interplay between the LAD's administrative remedy and right to file in Superior Court, and the joint public and private interests that are advanced by an LAD discrimination claim pursued in either forum, compel the conclusion that the contractual shortening of the LAD's two-year limitations period

29

for a private action is contrary to the public policy expressed in the LAD. The DCR remedy must remain accessible and vibrant. It cannot be eviscerated, as would occur if a shortening of the present two-year limitations period were to be contractually permitted. And the anti-discrimination public policy to be fulfilled through LAD claims may not be contractually curtailed by a limitation on the time for such actions. The waiver provision at issue in this matter is therefore unenforceable as to the LAD.[5]

In concluding, we note that the decision that we reach today is rooted in the unique importance of our LAD and the necessity for its effective enforcement. Other courts across the country have evaluated the enforceability of similar shortening of statute-of-limitations provisions as applied to their own state employment discrimination laws. At least two states have deemed these provisions contrary to public policy and refused to enforce them -- focusing on the public purpose and benefit of anti-discrimination laws.

The Supreme Court of Kansas voided a provision in an employee handbook that required all potential claims against the employer to be brought within six months of the cause of action.

---

[5] To the extent that plaintiff's worker's compensation retaliation claim is derivative of his LAD action, the waiver is inapplicable to that claim as well.

_Pfeifer v. Fed. Express Corp._, 304 P.3d 1226 (Kan. 2013). At issue was the worker's retaliation claim brought after the contracted-for six-month period. Id. at 1229. The court held that the provision "restricting an employee's time to bring a retaliatory discharge claim for a job termination suffered following that employee's exercise of a statutory right necessarily impedes the enforcement of that right and the public policy underlying it." Id. at 1234. Similarly, a California appellate court refused to enforce a provision in an employment application that shortened the statute of limitations for employment claims to six months. _Ellis v. U.S. Sec. Assocs._, 169 Cal. Rptr. 3d 752, 755 (Cal. Ct. App. 2014). Although California's scheme has an administrative exhaustion requirement, the court's focus was more broad, emphasizing that anti-discrimination laws "inure[] to the benefit of the public at large rather than to a particular employer or employee." Id. at 756 (citation omitted). But see _Hunt v. Raymour & Flanigan_, 105 A.D.3d 1005 (N.Y. App. Div. 2013) (upholding six-month statute of limitations provision contained in Raymour & Flanigan's job application without engaging in analysis of contrary public policy or public benefit reaped through anti-discrimination laws).

We accordingly reverse the judgment of the Appellate Division on the enforceability of the waiver provision as to

31

plaintiff's LAD claim.  In light of our holding, it is unnecessary to reach the novation argument advanced by plaintiff.

V.

This matter was argued in part on the basis of unconscionability of the challenged waiver provision.  Although our holding has proceeded down a different analytic path, we add that, undoubtedly, courts may refuse to enforce contracts, or discrete contract provisions, that are unconscionable.  See Muhammad v. Cty. Bank of Rehoboth Beach, 189 N.J. 1, 15 (2006), cert. denied, 549 U.S. 1338, 127 S. Ct. 2032, 167 L. Ed. 763 (2007).  The unconscionability determination requires evaluation of both procedure and substance.  Procedural unconscionability "can include a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process."  Ibid. (quoting Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564 (Ch. Div. 2002)).

Here the reduced period for bringing an LAD action, among other employment-related claims, was contained in an employment application.  Simply because the contract term was in an employment application does not end the inquiry for enforceability.  In Martindale, supra, 173 N.J. at 81, we upheld

32

an agreement to arbitrate contained in an employment application. However, the employee was a human resources officer, a more sophisticated employee than plaintiff, an applicant for an entry-level position. To apply for the needed job, plaintiff in this case was presented with a take-it-or-leave-it application. There was no bargaining here. The instant matter plainly involves a contract of adhesion and therefore necessarily involves indicia of procedural unconscionability. See Delta Funding Corp. v. Harris, 189 N.J. 28, 39 (2006). Moreover, the employment application at issue in Martindale did not restrict the rights of employees to bring claims; it merely utilized an arbitration clause to agree in which forum to bring them.

When a contract is one of adhesion, the inquiry requires further analysis of unconscionability. Rudbart v. N. Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 354, cert. denied sub. nom. First Fidelity Bank, N.A. v. Rudbart, 506 U.S. 871, 113 S. Ct. 203, 121 L. Ed. 2d 145 (1992). Our Court has applied four factors for evaluating unconscionability of contracts of adhesion: "[1] the subject matter of the contract, [2] the parties' relative bargaining positions, [3] the degree of economic compulsion motivating the 'adhering' party, and [4] the public interests affected by the contract." Id. at 356. Those factors focus on procedural and substantive aspects of the

contract "to determine whether the contract is so oppressive, or inconsistent with the vindication of public policy, that it would be unconscionable to permit its enforcement." Delta Funding, supra, 189 N.J. at 40 (citations omitted). In this instance, were an unconscionability analysis to be the prism through which a shortening of the LAD's statute of limitations should be analyzed, Rudbart's fourth factor, namely "the public interests affected by the contract," Rudbart, supra, 127 N.J. at 356, would feature in the analysis and would have led us to the same outcome based on the anti-discrimination concerns expressed in the LAD.

VI.

The judgment of the Appellate Division is reversed.


CHIEF JUSTICE RABNER; JUSTICES ALBIN, PATTERSON, and SOLOMON; and JUDGE CUFF (temporarily assigned) join in JUSTICE LaVECCHIA's opinion. JUSTICE FERNANDEZ-VINA did not participate.

34

SUPREME COURT OF NEW JERSEY

NO.    ___A-27___                          SEPTEMBER TERM 2014

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


SERGIO RODRIGUEZ,

        Plaintiff-Appellant,

                v.

RAYMOURS FURNITURE COMPANY,
INC., a corporation, t/a
RAYMOUR & FLANIGAN,

        Defendant-Respondent.


DECIDED         June 15, 2016
_____
                Chief Justice Rabner                       PRESIDING
_____
OPINION BY        Justice LaVecchia
_____
CONCURRING/DISSENTING OPINIONS BY   _____

DISSENTING OPINION BY _____

| CHECKLIST | REVERSE | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | ------------------ | |
| JUSTICE SOLOMON | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |