**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____________

Nos. 20-2433 & 21-1502

_____________

A. W., on behalf of N.W.

v.

PRINCETON PUBLIC SCHOOLS BOARD OF EDUCATION;
MICKI CRISAFULLI, individually, and in her official capacity as Director of Student Services

A. W., on behalf of N.W.,
Appellant in No. 20-2433
Princeton Public Schools Board, et al
Appellants in No. 21-1502

_____________

On Appeal from the District Court
for the District of New Jersey
(D.C. Civil No. 3:18-cv-13973)
District Judge: Honorable Michael A. Shipp

_____________

Argued: November 18, 2021

_____________

Before: CHAGARES, Chief Judge, BIBAS and FUENTES, Circuit Judges

(Filed: March 15, 2022)

Jay J. Rice **[ARGUED]**
Nagel Rice
103 Eisenhower Parkway
Roseland, NJ 07068

Matthew S. Slowinski **[ARGUED]**
Slowinski Atkins

290 West Mt. Pleasant Avenue
Eisenhower Corporate Campus, Suite 2310
Livingston, NJ 07039

Counsel for Plaintiff-Appellant/Cross-Appellee

Brett E.J. Gorman **[ARGUED]**
Emily E. Strawbridge
Parker McCay
9000 Midlantic Drive
Suite 300
Mount Laurel, NJ 08054

Counsel for Defendants-Appellees/Cross-Appellants

---

OPINION[*]

---

CHAGARES, Chief Judge.

Plaintiff A.W., on behalf of her minor child N.W., filed this action against defendants Princeton Public Schools Board of Education ("PPS") and Micki Crisafulli under federal statutes including the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq., the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132, et seq., the Rehabilitation Act of 1973, 29 U.S.C. §§ 794(a), et seq., and 42 U.S.C. § 1983, as well as New Jersey law. Central to the lawsuit are orders of a New Jersey Administrative Law Judge ("ALJ") upholding a settlement agreement between A.W. and PPS and waiver provisions contained therein. A.W. appeals the District Court's grant of summary judgment to the defendants and denial of her motion for partial

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

summary judgment. The defendants cross-appeal the District Court's denial of their sanctions motion under Federal Rule of Civil Procedure 11. For the reasons that follow, we will affirm both orders of the District Court.

I.

The procedural history and factual background of this case are well known to the parties, as set forth in the District Court's memorandum opinion, and we will not repeat them here.

The District Court had jurisdiction pursuant to 20 U.S.C. § 1415(i)(2) and 28 U.S.C. §§ 1331 and 1343. We have jurisdiction over the District Court's final orders granting summary judgment for the defendants and denying PPS's sanctions motion under 28 U.S.C. § 1291.

In cases arising under the IDEA, we apply a modified de novo standard of review, pursuant to which we give due weight to the underlying administrative proceedings. See D.K. v. Abington Sch. Dist., 696 F.3d 233, 243 (3d Cir. 2012). We treat the factual findings of the ALJ as "prima facie correct," S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003), but exercise plenary review over the District Court's conclusions of law, see D.S. v. Bayonne Bd. of Educ., 602 F.3d 553, 564 (3d Cir. 2010). We exercise plenary review over the District Court's grant of summary judgment as to A.W.'s other claims. See Cranbury Brick Yard, LLC v. United States, 943 F.3d 701, 708 (3d Cir. 2019). Under this standard, we will affirm a grant of summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Finally, we review the denial of a

motion for sanctions for abuse of discretion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405 (1990). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." Id.

## II.

### A.

At the outset, the parties dispute which of A.W.'s appeals of decisions of the ALJ were timely. The IDEA provides that parties have "90 days from the date of the decision . . . to bring [a civil] action" appealing the decision. 28 U.S.C. 1415(i)(2)(B). We do not reach whether the September 2017 and February 2018 decisions were timely appealed because we will not set aside the settlement.

A.W.'s appeal of the May 2018 decision falls outside the ninety-day limitation. However, A.W. promptly moved for reconsideration of that decision, and, after that motion was denied in June 2018, filed this action within ninety days of the reconsideration denial. As a general principle of federal law, where there is a pending reconsideration motion that was timely filed, "the statute of limitations for judicial review is tolled until the agency decides the petition for reconsideration." V.I. Conservation Soc., Inc. v. V.I. Bd. of Land Use Appeals, 881 F.2d 28, 31 (3d Cir. 1989). We see no reason to deviate from this ordinary tolling principle here. We therefore hold that A.W.'s appeals of the May 2018 and the June 2018 decisions are timely.

B.

As to the enforceability of the settlement agreement, A.W. raises three issues on appeal: (1) that the settlement agreement is void as contrary to public policy; (2) that the settlement agreement was obtained through equitable fraud; and (3) that A.W.'s waiver of N.W.'s rights was not knowing and voluntary. We consider each in turn.

1.

A.W. maintains that because the settlement agreement prospectively waives N.W.'s educational rights under federal and state law, it is void as contrary to public policy. The settlement agreement contains two primary waiver provisions. Paragraph 6 waives "any and all claims [A.W. and N.W.] have or may have accrued" against PPS "whether known or unknown . . . through June 30, 2019." Appendix ("App.") 217. Paragraph 7 indemnifies PPS for any claims accrued "through the date of the agreement[.]" App. 218. Two other paragraphs prospectively limit PPS's obligations to N.W. Paragraph 2 provides that that PPS's obligations to N.W. end on June 30, 2019. Paragraph 4 provides context for this limitation; it requires that N.W. disenroll from the district during the course of the agreement. If, during the course of the agreement, N.W. were to reenroll, PPS would provide an Individualized Education Plan ("IEP"), but PPS's "sole financial obligations" would be limited to the tuition payments in paragraph 1. App. 215–16.

Settlements serve an important public policy in that they "promote the amicable resolution of disputes and lighten the increasing load of litigation faced by courts." D.R. by M.R. v. E. Brunswick Bd. of Educ., 109 F.3d 896, 901 (3d Cir. 1997). This Court has

explained that IDEA settlement agreements "may release all claims arising out of the transaction with which the release was concerned even if they are not yet known; and broad releases are valid at least when negotiated between sophisticated parties." Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 282 (3d Cir. 2014). In at least one prior case, this Court has examined the nature of a settlement agreement that included a prospective waiver of IDEA rights and concluded that the settlement agreement was enforceable. See D.R., 109 F.3d at 901–02. However, we also recognized in that case "that in other cases where different facts are at issue, compelling public policy reasons may require a different conclusion." Id. at 901 n.2.[1]

After examining the settlement agreement, we hold that, with one exception, the waivers are not void as contrary to public policy. The plain language of these waiver provisions is clear. Taken together, the retrospective and prospective waiver provisions operate to resolve all claims associated with the 2017–18 and 2018–19 academic years, after which the settlement agreement contemplates that N.W. will no longer have a relationship with PPS. For that reason, paragraph 2 clarifies that PPS's obligations to N.W. end on June 30, 2019. The waivers are broad but serve as an appropriate mechanism by which the parties attempted to bring years of protracted litigation to a close. Moreover, the settlement agreement anticipates N.W.'s possible return to PPS during the course of the agreement and clarifies that PPS would provide an IEP and an in-

[1] A.W. also argues that prospective waivers of minors' rights are contrary to New Jersey public policy. The cases A.W.'s cites do not involve waivers of IDEA or civil rights, and therefore are poor analogs for this case.

district placement. PPS simply would not be obligated to provide additional financial support for other placements.

However, the prospective waiver of rights under the New Jersey Law Against Discrimination ("LAD") in paragraph 6 violates New Jersey public policy. New Jersey public policy prevents parties from agreeing to shorten the limitations period for discrimination claims. Rodriguez v. Raymours Furniture Co., 138 A.3d 528, 530 (N.J. 2016). If the parties may not contractually shorten the deadline for bringing claims under the LAD, it follows that they may not waive their rights under the LAD. See id. at 539 (noting that the public interest underlying the LAD to "root[] out forbidden discrimination may not be lightly contracted away by private arrangement"); cf. Vitale v. Schering-Plough Corp., 174 A.3d 973, 986 (N.J. 2017) (applying Rodriguez to conclude that a waiver of prospective claims under the New Jersey workers' compensation statutes is void as contrary to public policy).[2] Similarly, prospective waivers of rights under federal non-discrimination statutes are unenforceable. See, e.g., Alexander v. Gardner-Denver Co., 415 U.S. 36, 51–52 (1974) (holding that there can be no prospective waiver of an employee's rights under Title VII of the Civil Rights Act of 1964). Yet paragraph 6 does precisely that — it waives prospective state and federal discrimination claims through June 2019.

[2] Effective March 18, 2019, the LAD explicitly prohibits prospective waivers of rights or remedies under the statute. N.J. Stat. Ann. § 10:5-12.7(b). This statutory prohibition "appl[ies] to all contracts and agreements entered into, renewed, modified, or amended on or after the effective date." 2019 NJ Sess. Law Serv. Ch. 39 § 6.

The agreement stands because the discrimination waivers are severable. The settlement contains a severability clause, which is "indicative of the parties' intent that the agreement as a whole survives the excision of an unenforceable provision." Arafa v. Health Express Corp., 233 A.3d 495, 507 n.2 (N.J. 2020). Moreover, voiding "the illegal portion does not defeat the central purpose of the contract." Jacob v. Norris, McLaughlin & Marcus, 607 A.2d 142, 154 (N.J. 1992). The rest of the waivers are left intact. For these reasons, only the prospective discrimination waivers in paragraph 6 are void, and the rest of the settlement is enforceable.

2.

A.W. next contends that her claim that the settlement was obtained through equitable fraud should withstand summary judgment. A.W. identifies two alleged misrepresentations in support of this claim: (1) PPS's promise that The Lewis School ("TLS") would approve a payment plan; and (2) the omission of certain terms to which the parties orally agreed.

Unlike legal fraud, equitable fraud does not require scienter. Jewish Ctr. of Sussex Cnty. v. Whale, 432 A.2d 521, 524 (N.J. 1981). A plaintiff seeking "equitable remedies" need only show that she relied to her detriment on a material misrepresentation made by the other party. Id. A settlement obtained through equitable fraud may be reformed or rescinded. See Bonnco Petrol, Inc. v. Epstein, 560 A.2d 655, 661 (N.J. 1989).

The District Court properly rejected A.W.'s attempt to set aside the settlement agreement as the product of equitable fraud. In A.W.'s own words, "[PPS] recommended that [she] reach out to [TLS] to discuss a payment plan and that in [PPS's] experience,

[PPS has] had many children placed at [TLS] pursuant to payment plans." App. 223. There is no suggestion that PPS promised A.W. a payment plan. A.W.'s second argument, that PPS omitted a clause voiding the waivers if N.W. reenrolled in PPS, also fails. At the March 2018 hearing, a PPS representative summarized on the record the settlement terms, which did not include a clause voiding the waivers upon N.W.'s reenrollment. A.W. also underwent a colloquy with the ALJ, who confirmed twice that A.W. understood that she was releasing all claims, including future claims. The record indicates that within three business days of her signing the settlement agreement, A.W. purported to conditionally void the settlement agreement, subject to inclusion of this clause. But after PPS refused to modify the language, A.W. did not take explicit steps to void the agreement as she had done with a prior failed settlement in October 2017. A.W. did not contact the ALJ, and A.W. even emailed the PPS representative to inquire as to whether the PPS school board had approved the settlement agreement so that she could proceed with her tuition reimbursement. Accordingly, the District Court did not err in holding that the settlement agreement was not the product of equitable fraud.

3.

A.W. also argues that the District Court improperly applied the test for a knowing and voluntary waiver of N.W.'s IDEA rights. In cases involving the waiver of IDEA rights, this Court considers the factors set forth in W.B. v. Matula, 67 F.3d 484 (3d Cir. 1995), abrogated on other grounds by A.W. v. Jersey City Pub. Sch., 486 F.3d 791 (3d Cir. 2007), to determine whether the waiver was knowing and voluntary. The factors are:

> (1) the language of the agreement was clear and specific; (2) the consideration given in exchange for the waiver exceeded the relief to which the signer was already entitled by law; (3) the signer was represented by counsel; (4) the signer received an adequate explanation of the document; (5) the signer had time to reflect upon it; and (6) the signer understood its nature and scope.

Id. at 497.

The District Court did not err in holding that A.W.'s execution of the settlement agreement was knowing and voluntary. The language of the settlement agreement is clear and unambiguous. A.W. creates a conflict between paragraphs 2 and 6 where none exists. Paragraph 6 waives all rights through June 30, 2019, the end of the 2018–19 school year, and paragraph 2 provides that PPS shall have no obligations to N.W. after that date. Those provisions are reconcilable because paragraph 4 contemplates that N.W. would be disenrolled from the district. Nor is paragraph 4 "absurd." A.W. Br. 45. Read in the context of paragraph 1, paragraph 4 entitles N.W. to an IEP at an in-district placement but not additional financial payments for other placements.

Nor is paragraph 4 ambiguous as to whether the waivers are void upon reenrollment. They are not. New Jersey law permits the use of extrinsic evidence of circumstances surrounding an agreement, even where the agreement is unambiguous. Conway v. 287 Corp. Ctr. Assocs., 901 A.2d 341, 347 (N.J. 2006). But nothing in the record renders paragraph 4 ambiguous. As explained, A.W. wrote multiple times to PPS to ask for a modification of paragraph 4 to include a clause voiding the waivers upon reenrollment or clarification that PPS understood paragraph 4 this way. PPS refused to provide either, yet A.W. permitted the board to approve the settlement.

Consideration of the other Matula factors does not raise a genuine dispute of material fact. A.W. received consideration of full tuition for two years at TLS, and received an explanation of the terms at the March 2018 hearing. She had three days to review the terms of the agreement, and, following PPS's refusal to reform the agreement, did not contact the ALJ to void the settlement agreement. Although A.W. was pro se, she was also a practicing attorney. For these reasons, we conclude that the District Court did not err in holding that A.W.'s assent was knowing and voluntary under Matula.

C.

The First Amended Complaint also alleges § 1983 and state tort claims. These claims are barred under the settlement agreement. Paragraph 6 expressly waives "any and all claims" that "have or may have accrued" against PPS through June 30, 2019. App. 217. A.W. initiated this action on September 18, 2018. A.W. argues that because paragraph 7 specifically indemnifies PPS against tort claims, while paragraph 6 does not, such claims are covered only by paragraph 7, which waives claims accrued only through the date of the agreement. That reading is inconsistent with the language of paragraph 6. We therefore will affirm the District Court's order granting summary judgment to defendants on these claims.

D.

Finally, PPS and Crisafulli cross-appeal the District Court's denial of their Rule 11 sanctions motion, in which they argued that this case and A.W.'s conduct throughout were frivolous and intended to waste the parties' and the court's time.

Rule 11 requires that, when filing any submission with the Court, "an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that: (1) the submission is not presented for an improper purpose; (2) the legal contentions are nonfrivolous; and (3) factual contentions and denials of factual contentions have or likely will have evidentiary support. Fed. R. Civ. P. 11(b).

The District Court held that A.W. presented colorable arguments for her appeal of the ALJ's refusal to equitably reform the settlement agreement, her motion to disqualify defense counsel, and her motion for reconsideration. Although the District Court described some of A.W.'s conduct as "troubl[ing]" and cautioned "that in the future, a repetitive, meritless IDEA action" could trigger sanctions, App. 59, it stopped short of characterizing the action as frivolous.

We hold that the District Court did not abuse its discretion by denying defendants' sanctions motion. With respect to this federal action, the District Court correctly noted that certain rights under the IDEA are nonwaivable, and accordingly held that A.W.'s public policy argument was not the type of "hollow platitude" that was found to warrant sanctions in other cases. App. 55 (quoting Napier v. Thirty or More Unidentified Fed. Agents, 855 F.2d 1080, 1091 (3d Cir. 1988)). With respect to the disqualification and reconsideration motions, the District Court reasonably concluded that both motions had some factual basis. The District Court did not apply an erroneous view of the law or base any ruling on a clearly erroneous assessment of the evidence.

## III.

For the foregoing reasons, we will affirm the orders of the District Court.