NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1983-20

GILBERT ANTONUCCI,

      Plaintiff-Appellant,

v.

CURVATURE NEWCO, INC.,
TODD GREDESKY, and
ELIZABETH DAPOLITE,

      Defendants-Respondents.

_____

| APPROVED FOR PUBLICATION |
| :---: |
| **February 15, 2022** |
| APPELLATE DIVISION |

Submitted December 8, 2021 – Decided February 15, 2022

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law
Division, Gloucester County, Docket No. L-1034-20.

Ionno & Higbee, attorneys for appellant (Sebastian B.
Ionno and D. Rebecca Higbee, on the briefs).

Gibbons, PC, attorneys for respondents (John C.
Romeo and Cassandra J. Neugold, on the brief).

The opinion of the court was delivered by

GILSON, J.A.D.

Plaintiff Gilbert Antonucci appeals from an order compelling arbitration

and dismissing with prejudice his discrimination complaint against his former

employer and two of its employees. This appeal presents two questions: (1) whether the parties entered a binding agreement to arbitrate their employment disputes; and (2) whether the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, pre-empts a 2019 amendment to New Jersey's Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -50, that prohibits the waiver of procedural and substantive rights under LAD. That second question is an issue of first impression in this court.

We hold that the arbitration agreement is binding and that LAD's procedural prohibition, which would preclude arbitration, is pre-empted when applied to an arbitration agreement governed by the FAA. Nevertheless, we vacate the order entered by the Law Division and remand for the entry of a new order. Contrary to section 3 of the FAA, 9 U.S.C. § 3, the order on appeal dismissed plaintiff's complaint with prejudice rather than stay the litigation. We, therefore, remand for the entry of a new order compelling arbitration and staying the Law Division action until the arbitration is completed.

I.

In December 2010, plaintiff was hired as a field engineer by SMS Systems Maintenance Services, Inc. (SMS). In 2017, SMS merged with Curvature

Newco, Inc. (defendant or Curvature) and the combined entity used the Curvature name.

In October 2019, Curvature sent plaintiff an electronic version of the company's Codes of ethics and conduct and Employee Handbook (the Handbook). Plaintiff was directed to read and acknowledge the Codes and Handbook by reviewing them online as part of a training program.

The Codes and Handbook were over 112 pages and included an arbitration agreement (the Arbitration Agreement). The Arbitration Agreement was identified in the Handbook's table of contents and attached as a separate document in Appendix A.

The Arbitration Agreement stated that all disputes between Curvature and an employee would be resolved by binding and final arbitration. Curvature is defined to include the company and any of its directors, officers, or employees. The Agreement expressly stated that it covered all employment-related claims, including claims of wrongful termination and "discrimination, harassment, or retaliation." The Arbitration Agreement also explained that employees were waiving and giving up their right to bring claims in court or to have a jury trial on those claims. The waiver included claims based on federal or state statutes.

Specifically, the Arbitration Agreement stated, in relevant part:

By virtue of this Arbitration Agreement, you agree that any and all disputes, claims, or controversies between Curvature and you arising out of or relating to this Agreement, the employment relationship between the Parties, or the formation or termination of the employment relationship, that are not resolved by mutual agreement shall be resolved by final and binding arbitration as set forth in this Agreement. This Agreement includes claims that Curvature may have against Employee, or that Employee may have against Curvature. The term "Curvature" shall mean Curvature and its parents, subsidiaries, affiliated companies, owners, officers, directors, current and former employees, representatives, agents and assigns.

By entering into this Agreement, Curvature and you are waiving the right to a jury trial for employment related disputes. You further understand that entering into this Arbitration Agreement does not alter your at-will employment with Curvature.

. . . .

. . . This Arbitration Agreement does apply to all statutory, contractual and/or common law claims arising from employment with Curvature, including . . . wrongful termination; . . . discrimination, harassment, or retaliation of any kind, . . . violations of any federal, state or other governmental constitution, statute, ordinance or regulation . . . .

The Arbitration Agreement set forth an overview of the arbitration process, including descriptions of the arbitrator, the binding and final nature of the arbitrator's decision, that the arbitration would be conducted under the rules and procedures of the American Arbitration Association (AAA), and how the

4

employee could obtain a copy of those rules and procedures. The Arbitration Agreement also stated that it was "enforceable under and subject to the Federal Arbitration Act, 9 U.S.C. Sec. 1, et seq."

At the end of the Arbitration Agreement, it stated that an employee may indicate his or her acceptance "by signing in the space below." The Agreement also explained:

> However, if you voluntarily continue employment after the effective date of the Employee Handbook to which this Agreement is attached, you will also be deemed to have knowingly and voluntarily consented to, and accepted all the terms set forth in, this Agreement notwithstanding the lack of [the employee's] signature below.

Curvature's records establish that on October 22, 2019, plaintiff spent one hour and thirty-three minutes reviewing the company's Codes and 2019 Handbook, to which the Arbitration Agreement was attached. Plaintiff did not sign the Arbitration Agreement in the space provided. He electronically clicked on an "I Accept" check box acknowledging that he had "received and reviewed the policies and procedures" outlined in the Codes and Handbook.

On May 31, 2020, plaintiff was fired from his employment with Curvature. Several months later, in September 2020, he filed a complaint against Curvature and two of its employees in the Law Division. In the

A-1983-20

complaint, which he amended, he asserted claims of discrimination and wrongful termination under LAD. He also asserted that defendants "caused post-employment harm to [p]laintiff by contesting his claim for unemployment benefits."

In lieu of an answer, defendants moved to dismiss the complaint and compel arbitration. On February 19, 2021, the trial court heard oral argument, and that same day it issued a written opinion and order dismissing plaintiff's complaint with prejudice and compelling arbitration.

The trial court found that plaintiff had agreed to the Arbitration Agreement. In making that finding, the trial court found that Curvature had sent plaintiff the Handbook and Arbitration Agreement, he had acknowledged reviewing the documents, and that the Arbitration Agreement was clear in explaining that his continued employment constituted acceptance of the Arbitration Agreement. The trial court also found that the Agreement was valid and enforceable and that it covered the discrimination claims asserted by plaintiff. The trial court did not address the issue of whether the 2019 amendment to LAD was pre-empted by the FAA. Plaintiff now appeals from the order dismissing his complaint and compelling arbitration.

## II.

On appeal, plaintiff makes two arguments, contending that the trial court erred in (1) finding that he had agreed to the Arbitration Agreement; and (2) implicitly ruling that LAD's prohibition on arbitration of discrimination claims was pre-empted by the FAA.

1.    The Enforceability of the Arbitration Agreement.

The interpretation of an arbitration agreement and its enforceability are questions of law that we review de novo. Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019); Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 445-46 (2014). It is undisputed that plaintiff was given a copy of the Arbitration Agreement and had an opportunity to review it. Consequently, we also review on a de novo basis the question whether plaintiff agreed to arbitrate because that issue involves the application of established facts to the legal question of what constitutes assent to a contract. Skuse v. Pfizer, Inc., 244 N.J. 30, 50 (2020).

Under both the FAA and New Jersey law, arbitration is fundamentally a matter of contract. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67 (2010); 9 U.S.C. § 2; NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 424 (App. Div. 2011). The FAA "places arbitration agreements on an equal footing with other contracts." Rent-A-Center, 561 U.S. at 67.

A-1983-20

Accordingly, "the FAA 'permits states to regulate . . . arbitration agreements under general contract principles,' and a court may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Atalese, 219 N.J. at 441 (quoting Martindale v. Sandvik, Inc., 173 N.J. 76, 85 (2002)).

"An agreement to arbitrate, like any other contract, 'must be the product of mutual assent, as determined under customary principles of contract law.'" Id. at 442 (quoting NAACP, 421 N.J. Super. at 424). "A legally enforceable agreement requires 'a meeting of the minds.'" Ibid. (quoting Morton v. 4 Orchard Land Tr., 180 N.J. 118, 120 (2004)). Consequently, to be enforceable, the terms of an arbitration agreement must be clear, and any legal rights being waived must be identified. Id. at 442-43; see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 319-20 (2019).

To accomplish a waiver of rights, "[n]o magical language is required." Morgan v. Sanford Brown Inst., 225 N.J. 289, 309 (2016). Instead, "[o]ur courts have upheld arbitration clauses that have explained in various simple ways 'that arbitration is a waiver of the right to bring suit in a judicial forum.'" Ibid. (quoting Atalese, 219 N.J. at 444). Accordingly, in employment settings, "a waiver-of-rights provision must reflect that an employee has agreed clearly and

unambiguously to arbitrate the disputed claim." Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003). Moreover, the agreement must be supported by consideration. Martindale, 173 N.J. at 87-88.

The New Jersey Supreme Court addressed the enforceability of a similar employment-arbitration agreement in Skuse v. Pfizer, Inc., 244 N.J. 30 (2020). There, Pfizer sent its agreement to the employee by email. Id. at 53-54. The agreement informed the employee that by continuing to be employed for sixty days, she would waive her right to pursue employment-discrimination claims against Pfizer in court. Id. at 50. In addition, Pfizer explained the agreement through an online "training module," and provided a link to a frequently asked questions (FAQs) document. Id. at 37. Finally, Pfizer requested employees to click a box to electronically "acknowledge" the agreement. Id. at 60-61.

In holding that Pfizer's arbitration agreement was valid, the Court made it clear that an arbitration agreement can be sent to employees by electronic means, such as email. Id. at 49-50. Moreover, if an employer's communications unambiguously explain that continued employment will be deemed assent to the agreement, then the employee will be considered to have consented to the agreement's terms. Id. at 50-52. Under those circumstances, continued employment constitutes valid consideration. Id. at 50; see also Martindale, 173

N.J. at 88 (explaining that "continued employment has been found to constitute sufficient consideration to support certain employment-related agreements").

Here, the Arbitration Agreement reviewed by plaintiff is valid and enforceable. The terms of the Agreement clearly stated that the parties were giving up the right to pursue all employment-related claims in court, and instead agreed to arbitrate those claims before an AAA arbitrator. In that regard, the Arbitration Agreement expressly stated that it covered discrimination claims, including statutory claims.[1]

The Arbitration Agreement was also the product of mutual assent. Curvature sent plaintiff a copy of the Arbitration Agreement. Plaintiff had the opportunity to, and indeed did, review the Codes and Handbook. Accordingly, plaintiff had the opportunity to review the Arbitration Agreement, which was attached to the Handbook. Plaintiff also acknowledged that he had reviewed those documents and all the policies and procedures they described. Although plaintiff did not sign the Arbitration Agreement itself, he was informed that his

---

[1] We note that plaintiff does not dispute that if the Arbitration Agreement is valid, it covers his discrimination claims. To the extent that he disputed the scope of what should be arbitrated, the Agreement delegated that issue to the arbitrator. Delegations of the scope of an arbitration agreement are enforceable under the FAA. Henry Schein, Inc. v. Archer & White Sales, Inc., 586 U.S. ___, 139 S. Ct. 524, 529-30 (2019).

continued employment would constitute an acknowledgment of his agreement to arbitrate any employment-related disputes. Consequently, we hold that the Arbitration Agreement is a valid and enforceable agreement.

2.    Pre-emption Under the FAA.

LAD "plays a uniquely important role in fulfilling the public imperative of eradicating discrimination." Rodriguez v. Raymours Furniture Co., 225 N.J. 343, 347 (2016). Effective March 18, 2019, the Legislature amended LAD to add several sections, including Section 12.7, which states that "[a] provision in any employment contract that waives any substantive or procedural right or remedy relating to a claim of discrimination, retaliation, or harassment shall be deemed against public policy and unenforceable." N.J.S.A. 10:5-12.7(a) (codifying L. 2019, c. 39, § 1(a)). Section 12.7 also provides that no right or remedy under LAD "or any other statute or case law shall be prospectively waived." N.J.S.A 10:5-12.7(b).

The 2019 amendments to LAD apply prospectively. L. 2019, c. 39, § 6. In that regard, the amendment states: "This act shall take effect immediately and shall apply to all contracts and agreements entered into, renewed, modified, or amended on or after the effective date." Plaintiff was sent and agreed to the

Arbitration Agreement in October 2019. Accordingly, Section 12.7 of LAD applies to the Arbitration Agreement between Curvature and plaintiff.

Therefore, the issue is whether the FAA pre-empts Section 12.7 from applying to an arbitration agreement governed by the FAA. That issue is a question of law that we review de novo. See Skuse, 244 N.J. at 46; Kernahan, 236 N.J. at 316. Moreover, that legal question involves interpretations of the FAA and Section 12.7 of LAD and, therefore, is a mixed question of federal and New Jersey state law. See Kernahan, 236 N.J. at 316-19.

"The 'principal purpose' of the FAA is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 344 (2011) (alteration in original) (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)). Section 2 of the FAA makes arbitration agreements "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA "contains no express pre-emptive provision." Volt, 489 U.S. at 477. Nevertheless, the FAA protects arbitration agreements involving interstate commerce. Id. at 476. Accordingly, a state law that conflicts with the FAA or

frustrates its purpose violates the Supremacy Cause of the United States Constitution. U.S. Const. art. VI, cl. 2; Concepcion, 563 U.S. at 347 n.6.

"When state law prohibits outright the arbitration of a particular type of claim," the conflicting state law is pre-empted by the FAA. Concepcion, 563 U.S. at 341; Preston v. Ferrer, 552 U.S. 346, 353 (2008). Even when the state law does not expressly single out arbitration agreements, it will be pre-empted if its application "covertly accomplishes the same objective by disfavoring contracts that . . . have the defining features of arbitration agreements." Kindred Nursing Ctrs. Ltd. P'ship v. Clark, 581 U.S. ___, 137 S. Ct. 1421, 1426 (2017). See also Concepcion, 563 U.S. at 352 (explaining that a state law that "stands as an obstacle" to the FAA is pre-empted (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941))).

The United States Supreme Court has explained:

> The [FAA] also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements. In Concepcion, for example, we described a hypothetical state law declaring unenforceable any contract that "disallow[ed] an ultimate disposition [of a dispute] by a jury." Such a law might avoid referring to arbitration by name; but still, we explained, it would "rely on the uniqueness of an agreement to arbitrate as [its] basis" . . . .

A-1983-20

[Kindred Nursing, 137 S. Ct. at 1426 (all but first alteration in original) (citations omitted) (quoting Concepcion, 563 U.S. at 341-42).]

See also Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 132 (2020).

One of the procedural rights under LAD is the right to pursue an action in court "to be heard before a jury." N.J.S.A. 10:5-13(a)(1). Before the 2019 amendments to LAD, the New Jersey Supreme Court had recognized "that an individual may agree by contract to submit his or her statutory LAD claim to alternative dispute resolution." Rodriguez, 225 N.J. at 364 (citing Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 131 (2001)). Section 12.7 does not expressly use the term "arbitration," nor does it expressly state that it applies to agreements to arbitrate. Nevertheless, applied to an arbitration agreement in the employment context, the plain language of Section 12.7 of LAD prohibits all pre-dispute agreements if those agreements prospectively waive the right to file a court action for a LAD claim.

The waiver of the right to go to court and receive a jury trial is one of the primary objectives or "defining features" of an arbitration agreement. Kindred Nursing, 137 S. Ct. at 1426; see also Epic Sys. Corp. v. Lewis, 584 U.S. ___, 138 S. Ct. 1612, 1622 (2018) (noting that section 2 of the FAA "does not save defenses that target arbitration . . . by 'interfer[ing] with fundamental attributes

14                                                                          A-1983-20

of arbitration'" (alteration in original) (quoting Concepcion, 563 U.S. at 344));

Skuse, 244 N.J. at 62 (Albin, J., concurring) (noting arbitration clauses affect

"New Jersey's most fundamental public policy," the "right to a civil jury trial").

Consequently, Section 12.7 effectively "singles out arbitration agreements for

disfavored treatment."  Kindred Nursing, 137 S. Ct. at 1425; see also Marmet

Health Care Ctr., Inc. v. Brown, 565 U.S. 530, 530-31 (2012) (holding the FAA

pre-empted a state court's rule that prohibited arbitration of personal-injury and

wrongful-death suits in nursing home admission agreements); Perry v. Thomas,

482 U.S. 483, 491 (1987) (holding the FAA pre-empted a state-law requirement

that litigants be provided a judicial forum for wage disputes); Estate of Ruszala

ex. rel. Mizerak v. Brookdale Living Communities, Inc., 415 N.J. Super. 272,

293 (App. Div. 2010) (holding the FAA pre-empted New Jersey's statutory

prohibition of arbitration agreements in nursing-home contracts).

Accordingly, we conclude that the FAA pre-empts Section 12.7 when

applied to prevent arbitration called for in an agreement governed by the FAA.

Our Supreme Court has recognized that "[b]y agreeing to arbitrate a statutory

claim, a party does not forgo the substantive rights afforded by the statute; it

only submits to their resolution in an arbitral[,] rather than a judicial, forum."

Martindale, 173 N.J. at 93 (first alteration in original) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)).

In making our ruling, we point out that not all applications of Section 12.7 to other provisions included in an arbitration agreement are pre-empted. For example, a provision in an arbitration agreement reducing the time for bringing a discrimination claim to less than two years would not be enforceable under Section 12.7, or existing New Jersey case law, because it would waive a substantive or procedural right related to a claim of discrimination. The application of Section 12.7 to that provision would not be pre-empted by the FAA because it would not affect the parties' right to arbitrate; rather, the application would protect LAD's two-year limitation period. See Rodriguez, 225 N.J. at 364 (holding that a pre-dispute employment application that contractually shortened LAD's two-year limitation period was unenforceable as against New Jersey's public policy). We do not address the question whether Section 12.7 is enforceable when applied to an arbitration agreement governed by the New Jersey Arbitration Act, N.J.S.A. 2A:23B-1 to -36.

Applying our ruling to the order on appeal, we affirm the provision of the order compelling arbitration. We reverse the provision of the order dismissing the case with prejudice. See 9 U.S.C. § 3 (stating a court action should be stayed

16                                                                                    A-1983-20

if the action involves "any issue referable to arbitration"). Therefore, we remand for entry of a new order and direct that the new order compel arbitration and stay this civil action pending the arbitration.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1983-20