**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3045-23

JELAN JONES, individually
and on behalf of all other
persons similarly situated,

     Plaintiff-Appellant,

v.

TRD TRUCKING, INC.,

     Defendant-Respondent.

_____

Submitted February 12, 2025 – Decided July 2, 2025

Before Judges Paganelli and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-4048-23.

Castronovo & McKinney, LLC, attorneys for appellant (Thomas A. McKinney, of counsel and on the briefs; Anais V. Paccione, on the briefs).

Trenk Isabel Siddiqi & Shahdanian, PC, attorneys for respondent (John L. Shahdanian II, of counsel; Patrick D. Tobia, of counsel and on the brief).

PER CURIAM

Plaintiff, Jelan Jones, appeals from a May 17, 2024 Law Division order granting defendant TRD Trucking, Inc.'s motion to dismiss his collective class action complaint alleging defendant, his former employer, engaged in wage and hour violations, New Jersey Wage and Hour Law (NJWHL), N.J.S.A. 34:11-56a25, and New Jersey Wage Payment Law (NJWPL), N.J.S.A. 34:11-4.10, and staying the action pending the outcome of arbitration. Plaintiff alleges the trial court erred in compelling arbitration, as the written "Arbitration Agreement and Waiver" (the agreement) he signed when commencing employment contains several unconscionable provisions that each render the agreement unenforceable. After considering plaintiff's contentions in light of the applicable principles of law, we determine the agreement unconscionably shortens the statute of limitations and imposes improper time limitations on communications concerning the arbitration. As we also conclude the trial court correctly determined that severing the illegal time limitations would not undermine the central purpose of the otherwise enforceable agreement to arbitrate, we affirm.

A-3045-23

# I.

## A.    The Arbitration Agreement

Plaintiff was formerly employed as a driver for defendant, a commercial trucking company. According to plaintiff, "[w]hen [he] was hired by [defendant]," he executed, "along with many other onboarding" forms, the written agreement entitled "TRD Trucking Inc. Arbitration Agreement and Waiver."

The first paragraph of the one-and-a-half page agreement provided that arbitration was the "exclusive remedy for all disputes arising out of or related to employment with" defendant and further that plaintiff "agree[d] that [he] waive[d] all rights to any civil court action regarding the terms or conditions of employment, compensation, hours, the termination of employment or any other claim against" defendant. The agreement provided, "Only the arbitrator, and not a judge nor a jury, will decide any dispute."

The agreement next provided:

> I agree for any claim I may make, I must deliver a written request with proof of delivery, for arbitration to [defendant] within one . . . year from the date of termination, or the alleged incident(s) or conduct which occurred, and I must respond within fourteen . . . calendar days to each communication regarding arbitration. If [defendant] does not receive a written request for arbitration from me within

one . . . year, or if I do not respond to any communication about the arbitration proceedings within fourteen . . . calendar days, I will waive all rights against [defendant]. . . . [Defendant] and I shall each bear respective costs for legal representation.

The agreement contained a waiver of any participation in a class action and required that "[t]he cost of the arbitrator and court reporter, if any, shall be shared equally by both parties."

The agreement also provided that "[t]he arbitrator's award may include attorney's fees and other expenses," and any filing fee "may" be waived, and if declined, defendant would evaluate any further "written request . . . to advance all or part of the filing fee." The agreement concluded with an acknowledgment that employees are "entitled to legal representation, at [their] own cost," and "will be responsible for half . . . the cost of the arbitrator and any incidental costs of arbitration." It further acknowledged the employee's "right to reject th[e] agreement and waiver by not signing it," and that the employee "ha[d] been given ample opportunity to read and discuss this agreement with [his or her] advisors."

B. Plaintiff's Complaint and Motion to Dismiss

After plaintiff was terminated from employment, he filed a Collective and Class Action Complaint against defendant asserting claims under the NJWHL

4

and the NJWPL, alleging that although "[e]mployees . . . are required to attend training sessions and safety seminars throughout the year . . . and attend numerous training courses throughout the year[,] . . . [d]efendant refuses to pay truck drivers for . . . the training or safety seminars." He further alleged "[d]efendant would terminate truck drivers if they did not attend the training[s] and seminars" and "would offer gift cards to truck drivers if they were the first to sign up for the training[s] and seminars."

On April 3, 2024, defendant filed a motion to compel arbitration under the agreement and stay the action pending arbitration. In opposition, plaintiff filed a certification, claiming:

> Nobody at TRD [Trucking, Inc.] told me that I was signing an arbitration agreement, explained the [a]greement to me, advised me that I could bring the [a]greement home to review[,] . . . advised me that I could or should consult a lawyer before signing the [a]greement, or told me that I could negotiate anything in the [a]greement.

Plaintiff asserted he did not knowingly waive his right to pursue his statutory claims under the NJWHL and NJWPL, and the arbitration agreement in its entirety was unenforceable. He argued the agreement: (1) insufficiently explained the distinction between arbitration and litigation in court; (2) unconscionably required the employee to pay for half of the arbitration and

attorney's fees, thereby depriving plaintiff of his statutory rights to fee-shifting and a no-cost forum; and (3) illegally shortened the statute of limitations of plaintiff's claims to one year and limited the response time to any communications regarding arbitration to fourteen days, otherwise resulting in dismissal of the action, relying upon Rodriguez v. Raymours Furniture Co., 225 N.J. 343, 347 (2016).

Plaintiff further argued, in the absence of a severability clause, the illegal provisions invalidated the entire arbitration agreement, as the court could not simply sever any of these central provisions without improperly revising the contract terms.

Defendant claimed that the arbitration agreement, a separate document from plaintiff's employment contract, was enforceable as its terms were unambiguous. It emphasized that the agreement was entitled "Arbitration Agreement" and that the term appeared "several times in bold print," highlighting that the word "arbitration" also appeared thirty-one times throughout. Defendant also argued that the agreement did not deprive plaintiff of the statutory right to counsel fees or his right to a "no-cost forum" because it "empowered" the arbitrator to award fees. Lastly, defendant argued that, despite the absence of a severability clause, the court could strike any provision

shortening the statute of limitations under Jacob v. Norris, McLaughlin & Marcus, 128 N.J. 10, 33 (1992), while retaining the otherwise valid remaining agreement to arbitrate.

The trial court issued an order and written decision on May 17, 2024, granting defendant's motion to dismiss and staying the action pending arbitration, concluding that "[t]here was a clear and unambiguous intention between [p]laintiff and [d]efendant to arbitrate all claims that ar[o]se out of [p]laintiff's employment."  The court recognized Leodori v. Cigna Corp., 175 N.J. 293, 308 (2003), as the guiding caselaw on issues surrounding knowing and voluntary waivers of rights in arbitration agreements.  It found that the agreement "offer[ed] an explanation of how the arbitration process works" and explained that "arbitration w[ould] control for any dispute relating to compensation or wages, and that all rights to make a claim in civil court or before a jury [we]re waived," thereby meeting the requirements set forth in Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 448 (2014).

As for the counsel fee provisions, the court held "[t]he NJWHL and NJWPL both make clear that the award of attorney's fees is not mandatory and are to be allowed as determined by the court."  The court emphasized that the agreement "authorize[d] the [a]rbitrator to award [p]laintiff attorney's fees and

expenses, just as an employee's attorney's fees may be covered if a [p]laintiff's rights were violated" under the statutes. Therefore, the court concluded that plaintiff was "not forfeiting any of his statutory rights . . . as a result of being compelled to arbitrate his claims" under the wage law statutes.

The court also rejected plaintiff's argument that compelling an employee to share the costs of arbitration imposes an unconscionable burden on the employee. It found that plaintiff failed to demonstrate that the arbitration costs would be "prohibitively expensive," citing Green Tree Financial Corp. v. Randolph, 531 U.S. 79, 81 (2000), "other than by asserting [p]laintiff no longer is employed by [d]efendant," and concluded that "[r]equiring [p]laintiff to share the costs of arbitration does not violate [p]laintiff's statutory rights under the NJWHL or NJWPL." The court relied on our decision in Jaworski v. Ernst & Young U.S., LLP, 441 N.J. Super. 464, 482 (App. Div. 2015), in which we concluded an arbitration agreement that contained a fee-sharing provision did not render the agreement unconscionable. The court acknowledged this court's "distinguish[ing] an employee splitting the costs of arbitration with an employer from cases in which there was a possibility that a plaintiff would have to bear the entire cost of arbitration." It also distinguished the Supreme Court's decision in Delta Funding Corp. v. Harris, 189 N.J. 28, 42 (2006), finding that, in Delta,

the Court concluded requiring a plaintiff to bear the entire cost of arbitration was unconscionable, as it would prevent plaintiffs from pursuing statutory claims through mandatory arbitration.

The court, however, agreed that the provisions shortening both the statute of limitations and time afforded plaintiff to respond to communications were illegal. Nevertheless, the court found the agreement could be salvaged after striking the illegal terms, stating "if an illegal portion of a contract does not defeat the primary purpose of the contract, the illegal portion of the contract can be severed, and the remainder of the contract can be enforced, regardless of whether there is a severability provision," citing Jacob, 128 N.J. at 32-33 and Jones v. Gabrielan, 52 N.J. Super. 563, 572 (App. Div. 1958).

The trial court determined that "the primary purpose of the contract was to arbitrate all claims . . . aris[ing] from [p]laintiff's employment, including claims related to wages and compensation." It, therefore, ordered that "the portion of the agreement that s[ought] to deprive [p]laintiff of his statutory rights (by imposing a one-year statute of limitations and fourteen-day deadline for responding to communications) . . . be stricken from the [a]greement," and enforced "the remainder of the [a]greement."

## II.

Plaintiff appeals, contending the trial court erred by compelling arbitration because the arbitration agreement, which did not contain a severability clause, was unenforceable in its entirety. He argues the agreement: (1) was unconscionable because it required plaintiff to pay his own attorney's fees which "deprive[d] [him] of the fee-shifting rights of his statutory claims" and because it forced him to pay half of the arbitrator's fee; (2) illegally shortened the statute of limitations and that provision could not be severed without impermissibly rewriting the agreement; and (3) lacked a "mutual understanding" and did not "clearly and unambiguously explain" that plaintiff was relinquishing his right to litigate in court issues arising out of his employment. Plaintiff further contends that because other employees of defendant are subject to the same agreement with illegal language, "this [a]greement will continue to achieve a chilling effect, preventing employees from initiating their valid statutory claims," and will thereby bind those employees to the invalid arbitration agreement.

## III.

"We review a trial court's order granting or denying a motion to compel arbitration de novo because the validity of an arbitration agreement presents a

10

question of law."  Santana v. SmileDirectClub, LLC, 475 N.J. Super. 279, 285 (App. Div. 2023) (citing Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020)); see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019).  As a result, "we need not give deference to the [legal] analysis by the trial court." Goffe v. Foulke Mgmt. Corp., 238 N.J. 191, 207 (2019) (citing Morgan v. Sanford Brown Inst., 225 N.J. 289, 303 (2016)).

"New Jersey courts favor arbitration, as do the federal courts."  Achey v. Cellco P'ship, 475 N.J. Super. 446, 454 (App. Div. 2023) (citing Flanzman v. Jenny Craig, Inc., 244 N.J. 119, 133-34 (2020)).  Indeed, there is a "strong public policy in our state favoring arbitration as a means of dispute resolution and requiring a liberal construction of contracts in favor of arbitration."  Alamo Rent-A-Car, Inc. v. Galarza, 306 N.J. Super. 384, 389 (App. Div. 1997).

Although "arbitration [i]s a favored method for resolving disputes[] . . . [t]hat favored status . . . is not without limits."  Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 131-32 (2001).  In assessing the validity of an arbitration agreement, "[a] court must first apply 'state contract-law principles . . . [to determine] whether a valid agreement to arbitrate exists.'"  Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 187 (2013) (second alteration in original) (quoting Hojnowski v. Vans Skate

Park, 187 N.J. 323, 342 (2006)). "This preliminary question, commonly referred to as arbitrability, underscores the fundamental principle that a party must agree to submit to arbitration." Ibid. (citing Garfinkel, 168 N.J. at 132). "[U]nder New Jersey law, any contractual 'waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." Atalese, 219 N.J. at 443 (second alteration in original) (quoting Leodori, 175 N.J. at 302).

"[I]t is well established that . . . employee[s] may . . . waive [their] right to pursue a statutory claim in a judicial forum in favor of arbitration." Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002) (citing Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 30 (1991)). However, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral rather than a judicial[] forum." Id. at 93 (first alteration in original) (quoting Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985)).

An arbitration clause can be invalidated and declared unenforceable by "generally applicable contract defenses, such as fraud, duress, or unconscionability." Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996). When a party to an arbitration agreement argues that the agreement is

unconscionable and unenforceable, we look to the same state law principles that apply to contracts generally. See Delta Funding Corp., 189 N.J. at 39. When a party asserts an allegation of unconscionability, courts must conduct a fact-sensitive analysis. See Muhammad v. Cnty. Bank of Rehoboth Beach, 189 N.J. 1, 16 (2006).

Unconscionability refers to "overreaching or imposition resulting from a bargaining disparity between the parties, or such patent unfairness in the contract that no reasonable person not acting under compulsion or out of necessity would accept its terms." D.M.C. v. K.H.G., 471 N.J. Super. 10, 27 (App. Div. 2022) (quoting Howard v. Diolosa, 241 N.J. Super. 222, 230 (App. Div. 1990)). Unconscionability consists of "two elements, procedural and substantive." Ibid. Procedural unconscionability consists of unfairness in contract formation, and it can manifest in "a variety of inadequacies, such as age, literacy, lack of sophistication, hidden or unduly complex contract terms, bargaining tactics, and the particular setting existing during the contract formation process." Rodriguez, 225 N.J. at 366 (quoting Muhammad, 189 N.J. at 15). Substantive unconscionability in general concerns "harsh or unfair one-sided terms." Muhammad, 189 N.J. at 15 (citing Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564-66 (Ch. Div. 2002)). A contract may be

substantively unconscionable, for instance, where the bargain is "so one-sided as to shock the court's conscience." D.M.C., 471 N.J. Super. at 27-28 (quoting Est. of Cohen by Perelman v. Booth Computs., 421 N.J. Super. 134, 158 (App. Div. 2011)).

The party seeking to invalidate the contract bears the burden of demonstrating the agreement is unconscionable. See Howard, 241 N.J. Super. at 230. Generally, we apply "a sliding-scale approach to determine overall unconscionability, considering the relative levels of both procedural and substantive unconscionability." Delta Funding Corp., 189 N.J. at 40. The analysis is fact-sensitive and made on a case-by-case basis. Id. at 63.

A.

We first address plaintiff's contention that "the [a]rbitration [a]greement is invalid because it fails to clearly and unambiguously explain what rights plaintiff relinquished." Our Supreme Court in Atalese intended "to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Atalese, 219 N.J. at 444 (quoting Garfinkel, 168 N.J. at 132). Accordingly, the Court has held that although "no prescribed set of words must be included in an arbitration clause to accomplish a waiver of rights," an enforceable arbitration clause "at least in some general

14

and sufficiently broad way, must explain that the plaintiff is giving up [his or] her right to bring [his or] her claims in court or have a jury resolve the dispute." Id. at 447.

Applying these principles, we are satisfied the agreement's language sufficiently advised plaintiff that he was forgoing his right to bring his claim in court and instead agreeing to arbitration. It explained: arbitration was the "exclusive remedy" for all employment-related disputes, plaintiff "waive[d] all rights to any civil court action," and "[o]nly the arbitrator" would decide "all disputes," "not a judge nor a jury." We discern no ambiguity or deficiency in the agreement's language, particularly taken together with plaintiff's acknowledgment that he had the right to reject the agreement.

B.

Next, we consider plaintiff's claim that the provision requiring that he share the cost of arbitration equally is unduly financially onerous for him and all similarly situated employees who have lost their employment and income and if left standing will impose a "chilling effect, preventing employees from initiating their valid statutory claims." Plaintiff describes this provision as "a roadblock in [his] ability to pursue his claims." He cites to Roach v. BM Motoring, LLC, 228 N.J. 163 (2017), contending that "a defendant's failure to

15

advance the high fees and costs of arbitration is a reason not to compel arbitration." He contends the trial court failed to "fully consider the ramifications of the fee-sharing portion of the [a]greement," which he claims "[r]equir[es] a terminated employee—who just lost his entire financial footing— to cover half the costs of arbitration and his own legal expenses." He argues this "constitutes a de facto loss of [his] statutory rights" and that, as "[a]n employee who was just terminated[, he] cannot be expected to have the means to front the arbitration costs."

Plaintiff also argues that the court "never considered how the [a]greement's fee-sharing requirement might affect the other potential members of [p]laintiff's class and how the costs of arbitration may be prohibitively expensive for the class," as plaintiff's complaint "encompass[es] all persons who work or have worked as truck drivers for [d]efendant."

Defendant contends that plaintiff's "reliance on <u>Roach</u> . . . as to the issue of a defendant's failure to advance costs of arbitration as a reason not to compel arbitration is misplaced." Defendant emphasizes that the Court in <u>Roach</u> "made clear that [it was] not establishing any 'bright-line rule,'" and the Court's analysis focused on the defendant's failure "to advance required fees that resulted in the

16                                                                                    A-3045-23

dismissal of the arbitration claim, which deprived a party of the benefit of the agreement." Defendant contends there was "no such conduct here."

Our "Supreme Court has recognized that 'the prospects of having to shoulder all the costs of arbitration could chill . . . [plaintiffs] from pursuing their statutory claims through mandatory arbitration.'" Jaworski, 441 N.J. Super. at 482 (alteration in original) (quoting Delta Funding Corp., 189 N.J. at 42). An arbitration cost-shifting provision that has the potential to mandate plaintiffs "'to bear the risk that [they] will be required to pay all arbitration costs' [imposes] an unconscionable 'deterrent to the vindication of her statutory rights.'" Ibid. (quoting Delta Funding Corp., 189 N.J. at 43).

Nevertheless, we have held that agreements requiring the parties to share equally the arbitration costs are not per se unconscionable. See ibid. (upholding contract splitting arbitration expenses in the absence of a provision exposing an employee "to shoulder the entire pecuniary burden of the arbitration process"). The United States Supreme Court has held that "[t]he 'risk' that [the plaintiff] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." Green Tree Fin. Corp., 531 U.S. at 91. The burden is on the party seeking to invalidate the agreement to show it would be cost prohibitive. Id. at 91-92.

Notably, under New Jersey's Arbitration Act, N.J.S.A. 2A:23B-21(b), "[a]n arbitrator may award . . . reasonable expenses of arbitration if such an award is authorized by law in a civil action involving the same claim or by the agreement of the parties to the arbitration proceeding." Further, the agreement itself provides that "[t]he arbitrator's award may include attorney's fees and other expenses," and any filing fee "may" be waived, and if declined, defendant would evaluate any further "written request . . . to advance all or part of the filing fee."

The trial court found plaintiff's general assertions that the cost sharing would be prohibitively expensive because he is no longer employed was insufficient, standing alone, to strike the arbitration provision as unconscionable. We agree.

The provision does not unconscionably require plaintiff to shoulder the entire cost of the arbitrator; to the contrary, it begins with an agreement to share costs, leaving open the arbitrator's ability to allocate those fees to defendant in any award. It further contains provisions designed to allow the employee to request a waiver of any filing fees. There is nothing inherent in these provisions that render plaintiff's statutory rights vulnerable to unduly burdensome arbitration costs.

C.

We next review and reject plaintiff's assertion that the agreement also unconscionably restricts his statutory right to counsel fee-shifting by requiring that he "bear respective costs for legal representation."

New Jersey has "generally adhered to the so-called 'American Rule,' meaning that 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" N. Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 569 (1999) (quoting Rendine v. Pantzer, 141 N.J. 292, 322 (1995)). Notwithstanding this general rule, "a prevailing party can recover those fees if they are expressly provided for by statute, court rule, or contract." Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 385 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440 (2001)).

Importantly, "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral rather than a judicial[] forum." Delta Funding Corp., 189 N.J. at 44 (first alteration in original) (quoting Martindale, 173 N.J. at 93). Consequently, an agreement to arbitrate "may not limit a [party]'s ability to pursue the statutory remedy of attorney's fees and costs when it is available to

prevailing parties."  Ibid.  Indeed, "[i]t is well understood that fee-shifting provisions can deter a litigant from pursuing a claim."  Id. at 42.

Employing these principles, we are not persuaded that the agreement illegally restricted plaintiff's statutory right to seek an award of reasonable counsel fees.  The NJWHL and NJWPL explicitly allow a prevailing party to recover attorney's fees.  See N.J.S.A. 34:11-56a25 ("If any employee is paid by an employer less than the minimum fair wage to which the employee is entitled[,] . . . the employee may recover in a civil action . . . reasonable attorney's fees as determined by the court, except . . . if there is an agreement of the employee to accept payment of the unpaid wages or compensation . . . .");  N.J.S.A. 34:11-4.10(c) ("If any employer fails to pay the full amount of wages to an employee agreed to or required by . . . the provisions of [this Act], . . . the employee may recover in a civil action . . . reasonable attorney's fees as are allowed by the court, except . . . if there is an agreement of the employee to accept payment of the unpaid wages . . . .").

The agreement specifically provides that "[t]he arbitrator's award may include attorney's fees and other expenses."  (Emphasis added).  Therefore, should plaintiff prevail under any claims he asserted in his complaint, the

arbitrator "may include attorney's fees and other expenses," just as a court could do if plaintiff prevailed.

D.

Finally, we address plaintiff's argument that the trial court improperly severed from the agreement the time limitation provisions it found were unconscionable.

As the trial court found, and defendant does not dispute on appeal, under Rodriguez, the agreement "impermissibly shorten[ed] the statute of limitations on [p]laintiff's claims" under the wage and hour laws from six years to within one year of termination or the date of any alleged incident. See Rodriguez, 225 N.J. at 364-65 (finding an agreement to shorten the Law Against Discrimination's two-year limitations period to six months undermined the legislative scheme and was therefore unenforceable). Likewise, defendant does not challenge on appeal the court's finding the agreement impermissibly circumvents governing court rules by mandating dismissal of plaintiff's claims upon failure to "respond within fourteen . . . calendar days of each communication regarding arbitration."

Plaintiff asserts the court improperly severed these provisions despite the non-severability of the agreement and despite their inextricable link to the

central purpose of the agreement. He further contends the court engaged in judicial revision of a non-severable contract by striking the time limitations. He adds that severance from plaintiff's agreement will allow the illegality to thwart claims by other employees as "[m]ost layperson employees will never know the law beyond what is written in the [a]greement and will take it at face value," which will result in "a chilling effect, preventing employees from initiating their valid statutory claims."

Although defendant concedes that the statute of limitations provision is illegal, it argues "the time-limitation provision is not expressly linked with the arbitration provisions," and because severance of the provision does not concern the central purpose of the contract, the residual agreement remains enforceable.

Severing provisions of a contract and enforcing the rest of an agreement is an option if "striking the unenforceable portions . . . leaves behind a clear residue that is manifestly consistent with the 'central purpose' of the contracting parties." NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 437 (App. Div. 2011) (quoting Jacob, 128 N.J. at 33). Even in the absence of a severability clause, a court may sever an invalid provision of a contract and enforce its other provisions as long as the "illegal portion . . . does not defeat the central purpose of the contract." Curran v. Curran, 453 N.J. Super. 315, 322

(App. Div. 2018) (quoting <u>Jacob</u>, 128 N.J. at 33). As the Court in <u>Jacob</u> recognized, "'courts enforce the severable legal parts of an illegal divisible agreement where the unlawfulness does not permeate the whole and even in the case of indivisible contracts they strive to segregate and uphold if possible such portions as may be legal.'" 128 N.J. at 33 (quoting 14 <u>Williston on Contracts</u> 1630, at 13 (Jaeger, 3d ed. 1972)).

We have reviewed the agreement in light of the applicable caselaw and conclude striking the time-limitation provisions does not "defeat the central purpose of the contract." <u>Curran</u>, 453 N.J. Super. at 322. The free-standing agreement's central purpose—to resolve any issues arising out of plaintiff's employment through arbitration—is readily discernable from its language. The agreement expressly states, "If an employment dispute arises related to my employment[,] . . . I agree to submit any such dispute arising out of my employment or the termination of employment . . . exclusively to binding arbitration under the Federal Arbitration Act." It includes a non-exhaustive list of all the issues the parties intended to be resolved by an arbitrator, "including, but not limited to, claims of compensation, wages, benefits, discrimination, harassment, unlawful termination based on race, gender, age, national origin, disability, breach of contract or any other bias prohibited by law."

The trial court correctly determined that striking the time-limitation provisions does not defeat the parties' central intent to have any disputes resolved through arbitration. The provisions agreeing to "deliver a written request [for arbitration] . . . within one . . . year from the date of termination, or the alleged incident(s) or conduct which occurred," and expressing the employee's concession, "[I]f I do not respond to any communication about the arbitration proceedings within fourteen . . . calendar days, I will waive all rights against [defendant]," are distinct and separate from the remainder of the agreement. Removing these two provisions does not necessitate judicial revision of the contract; to the contrary, it "leaves behind a clear residue that is manifestly consistent with the 'central purpose' of the contracting parties, and that is capable of enforcement." NAACP, 421 N.J. Super. at 437-38; see, e.g., Hojnowski, 187 N.J. at 342 (severing unconscionable exculpatory waiver provision and enforcing agreement to arbitrate); Muhammad, 189 N.J. at 26 (severing unconscionable class action waiver provision and enforcing agreement to arbitrate); Est. of Ruszala ex rel. Mizerak v. Brookdale Living Cmtys., Inc., 415 N.J. Super. 272, 300 (App. Div. 2010) (severing unconscionable limitations of discovery and damages provisions and enforcing agreement to arbitrate). In

the aftermath of the revision, applicable statutes of limitations and discovery rules and remedies will control.

We recognize plaintiff raises concerns should the illegal provisions remain in defendant's agreements going forward. However, defendant has conceded that its time limitations are unconscionable and unenforceable, and by severance, all claims will be controlled by their respective statutes of limitations. Critically, as to the matter squarely before us, we are confident no temporal impediments remain to arbitrating and fully considering these claims.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division